[No. B047385. Second Dist., Div. Six. Jan. 9, 1991.]

JOVITA CARDENAS, Plaintiff and Respondent, v.
MISSION INDUSTRIES, Defendant and Appellant.

**[Opinion certified for partial publication.†]**

†Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for partial publication. The portions directed to be published follow.

954

**COUNSEL**

Mullen, McCaughey & Kenzell, George L. Wittenburg and Gary W. Robinson, for Defendant and Appellant.

Anticouni & Anticouni and Bruce N. Anticouni for Plaintiff and Respondent.

---

**OPINION**

**ABBE, J.***—Mission Industries (Mission) appeals from the judgment after trial by court, awarding respondent, Jovita Cardenas (Cardenas), overtime pay, a waiting-time penalty, interest, and attorney's fees. We affirm.

### FACTS

From January 7, 1987, through April 4, 1988, Cardenas was a live-in household employee of Linda Page Katzenstein McCaughey (Page).

Page was a major stockholder, chairman of the board and a vice-president of Mission. Shortly after Cardenas began work, she told Page that she needed health benefits. Page arranged for Cardenas to have health insurance through Mission's group insurance plan by having her placed on Mission's payroll. Although Mission thereafter issued all of Cardenas's paychecks, she never actually performed any work for Mission or engaged in any activity relating to its business. Throughout her employment, Cardenas worked exclusively as a live-in household employee of Page, who then reimbursed Mission for Cardenas's salary and benefits.

Mission paid Cardenas a monthly salary, agreed upon by Page and Cardenas, which did not vary from month to month regardless of the number of hours worked. Cardenas received a salary increase on September 1, 1987.

Cardenas was scheduled to work five days a week, with Sundays and Mondays off. However, she was required to work on any Sunday or Monday that Page was out of town. When Cardenas worked a full day on her days off, Page gave her additional compensation directly by personal check. Cardenas testified that Page at first gave her $60 on such occasions and later, $100.

After her employment ended, Cardenas filed a complaint with the Labor Commissioner, alleging that she was entitled to receive overtime pay. After a hearing, the Labor Commissioner awarded her overtime wages, plus

---

* Retired Associate Justice of the Court of Appeal sitting under assignment by the Chairperson of the Judicial Council.

penalty and interest. Mission filed notice of appeal in the superior court, for trial de novo, pursuant to Labor Code section 98.2.

Cardenas testified that at the time of her initial interview, Page told her that her duties would include caring for Page's two children (a ten-year-old boy and an eight-year-old girl), running errands, doing the laundry, and doing the general grocery shopping for the family.

Cardenas testified in detail as to her activities and duties during her workday, which generally lasted from about 7:30 a.m. until between 9 p.m. and 10 p.m., when the children were put to bed and went to sleep. She stated that in addition to caring for the children and doing chores directly related to their care, many of her other daily duties, including grocery shopping, running errands, doing the laundry and preparing dinner, were done for the entire household, including Page's fiancé when he moved into the home; and that when Page had guests, Cardenas shopped for everything needed to entertain them. She estimated that she spent between four and five hours a day doing things not exclusively related to caring for the children.

Page testified that Cardenas's duties were only to care for the children; that she did not do laundry, shop for groceries or prepare meals for the entire household or run personal errands for her; and that Cardenas had considerable free time during the workday when the children were in school.

Both Cardenas and Page testified that Page would write Cardenas a personal check for money to pay for groceries and other purchases. Cardenas stated that at first Page would give her approximately $500 whenever she told her that she needed money; subsequently she increased the amount to $700; and that she gave her $20 per week for gasoline. Page testified that she gave respondent $800 or $900 per month for groceries and "little incidentals."

Neither Cardenas nor Page maintained daily time records of the hours Cardenas worked, as required by law. Cardenas's reconstruction, to the best of her recollection, of the hours and days worked throughout the term of her employment, was received into evidence.

Paul Rodriguez, a Deputy Labor Commissioner, testified that at the request of Cardenas's attorney, he had computed the amount of overtime pay that would be due her under Industrial Welfare Commission wage

order 15-86[1] according to her reconstruction of the hours she worked. The court received his calculations into evidence. He testified that Cardenas was entitled to $14,695.79.

In holding that Cardenas was entitled to overtime pay, the court made findings that included the following:

1.  Although Cardenas was employed by Mission for purposes of health insurance, taxes, and other payroll procedures, her employment was solely in Page's residence. Therefore, Cardenas was covered by wage order No. 15-86, which sets forth the terms and conditions of employment of persons hired by private householders to work in their homes.

2.  The court specifically concluded that Cardenas was not a "personal attendant" as defined in the wage order,[2] based on its finding that she credibly testified that she spent a number of hours each day performing housekeeping duties for the entire family and running personal errands for Page, and that such duties "amounted to a significant amount of work other than the caring for Mrs. Page's two children." Therefore, the court concluded that Cardenas was not a "personal attendant" to the two children.

3.  The court found it clear from the testimony of both Page and Cardenas that Cardenas had worked more than nine hours a day and more than forty five hours in a week without receiving overtime compensation. However, the court found that Cardenas "had some time to herself each day and that her reconstruction of hours did not take into account all of the personal time that was available to her." Accordingly, the court stated that it was "reducing the hours [Cardenas] was not properly compensated for by 25% . . . ."

The judgment included overtime pay of $11,955, a waiting-time penalty of $2,296.25, interest in the amount of $1,635.93, and attorney's fees of $3,500.

DISCUSSION

I

Mission argues that the trial court erred in finding that Cardenas was not a "personal attendant," exempt from the overtime provisions of the wage order. We disagree.

---

[1] All wage order references are to Industrial Welfare Commission wage order 15-86.

[2] Wage order 15-86, with its overtime provisions, does not apply to workers classified as "personal attendants."

Under this wage order, live-in household employees are entitled to be paid time and one-half for all hours worked in excess of nine during a twelve-hour workday. (§ 3(A)(1), (2).)[3] If they are required to work more than five workdays in any workweek, they must be compensated for the first nine hours at time and one-half; time worked in excess of nine hours on the sixth and seventh workdays must be compensated at double time. (§ 3(B). None of the provisions of the order applies to personal attendants. (§ 1(B).)

Section 2(I) defines a "personal attendant" as a babysitter or "any person employed by a private householder . . . to supervise, feed, or dress a child or person who by reason of advanced age, physical disability, or mental deficiency needs supervision." This section provides that "[t]he status of 'personal attendant' shall apply when no significant amount of work other than the foregoing is required."

Neither counsel nor we have found any reported cases interpreting the meaning of "personal attendant" as defined in the order. However, section 231 of the draft of the operations and procedures manual, relied on by the the Office of the Labor Commissioner, provides that duties of a personal attendant may normally include household work related to the care of a child or infirm person, such as cooking, making the bed or washing the clothes for that individual. The manual also directs that "[o]ther general housework may also be included if it does not constitute a 'significant' amount, that is, if it does not exceed 20 percent of the hours worked in the week."

Interpretive bulletin 86-1, issued by the Labor Commissioner on March 12, 1986, defines "no significant amount of work other than the foregoing" in the wage order's definition of "personal attendant" to mean "not more than 20 percent of the work time," and adds that "[u]sually, such 'other' work involves housekeeping duties."

■ Under the "substantial evidence" standard of review, which we must apply here, ". . . all factual matters will be viewed most favorably to the prevailing party [citations] and in support of the judgment . . . ." (*Nestle* v. *City of Santa Monica* (1972) 6 Cal.3d 920, 925 [101 Cal.Rptr. 568, 496 P.2d 480].) All reasonable inferences from the evidence will be accorded the prevailing party. (*Hasson* v. *Ford Motor Co.* (1977) 19 Cal.3d 530, 544 [138 Cal.Rptr. 705, 564 P.2d 857, 99 A.L.R.3d 158].) The reviewing court will sustain the judgment if any substantial evidence supports it. (*Marriage of Mix* (1975) 14 Cal.3d 604, 614 [122 Cal.Rptr. 79, 536 P.2d

---

[3] All further section references are to Industrial Welfare Commission wage order 15-86 unless otherwise stated.

479].) It cannot reweigh the evidence, nor can it resolve conflicts in the evidence or judge credibility. (*Hasson* v. *Ford Motor Co. supra*, 19 Cal.3d at p. 544; *Nestle* v. *City of Santa Monica, supra*, 6 Cal.3d at p. 925.)

■ The trial court here specifically concluded that Cardenas was not a "personal attendant" because it found credible her testimony that her activities included a significant amount of work unrelated to the care of the children.

There is no merit to Mission's argument that Cardenas was a personal attendant because there is no substantial evidence in the record to support a finding that she was "required" to perform a substantial amount of work unrelated to the care of the children.

Section 2(H) of the wage order defines "hours worked" as "the time during which an employee is subject to the control of an employer, and includes all the time the employee is suffered or permitted to work, whether or not required to do so."

Interpretive bulletin 86-1 defines "no significant amount of work" as meaning "not more than 20 percent of the work time." Logically, "work time" has to mean "hours worked." Therefore, we conclude that the status of "personal attendant" does not apply if, as impliedly found in the present case, more than 20 percent of the time respondent was "required" to work or was "suffered or permitted to work" in performing general housekeeping tasks unrelated to the care of the children.

We find that there was substantial evidence before the court to support its finding that Cardenas was not a personal attendant to the children. ■ Since this finding necessarily implied that such duties constituted more than 20 percent of the hours she worked each week, the court was not required to make a separate finding on this issue. (See *Hosford* v. *Board of Administration of Public Employees' Retirement System* (1978) 77 Cal.App.3d 854, 865 [143 Cal.Rptr. 760].)

. . . . . . . . . . . . . . . . . . . .*

IV

■ Mission argues that because the court's award of overtime pay was less than that of the Labor Commissioner, the court erred in finding that

*See footnote, *ante*, page 952.

Mission unsuccessfully sought review of the Labor Commissioner's adverse order and hence in awarding respondent attorneys' fees. We disagree.

Labor Code section 98.2, subd. (b) provides that if the party seeking the trial court's review of the Labor Commissioner's order is unsuccessful on appeal to that court, the court shall assess the costs and reasonable attorneys' fees incurred by the other party and assess that amount as a cost upon the party filing the appeal.

Appeal to a court of the Labor Commissioner's order is not an appeal in the usual sense; rather, it is a trial de novo. (Lab. Code, § 98.2(a).) For an appellant to be considered the successful party when seeking judicial review of an award of the Labor Commissioner, the judgment of the trial court must completely eliminate the Labor Commissioner's prior award. (See *Triad Data Services, Inc.* v. *Jackson* (1984) 153 Cal.App.3d Supp. 1, 14 [200 Cal.Rptr. 418].) ■ The de novo hearing is "in no sense a review of the hearing previously held, but is a complete trial of the controversy, the same as if no previous hearing had ever been held . . . . The decision therein is binding upon the parties thereto and takes the place of and completely nullifies the former determination of the matter." (*Collier & Wallis, Ltd.* v. *Astor* (1937) 9 Cal.2d 202, 205 [70 P.2d 171].) As we stated in *Hernandez* v. *Mendoza* (1988) 199 Cal.App.3d 721, 725 [245 Cal.Rptr. 36]: "This means that superior court proceedings constitute a new trial in the fullest sense, and the parties may introduce any relevant evidence not presented at the administrative hearing. [Citation.] The findings of the Labor Commissioner are entitled to no weight, and review is accorded to the facts presented to the superior court and not to the decision of the commissioner. [Citation.]"

■ In the present case, the judgment of the trial court was not in favor of Mission. The court found against Mission on all the issues in this case. The fact that the amount of overtime wages awarded by the Labor Commissioner was reduced by the trial court is irrelevant. Cardenas was the prevailing party.

.  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .*

---

*See footnote, *ante*, page 952.

The judgment awarding Cardenas overtime pay, a waiting time penalty, interest, attorney fees and costs is affirmed.

Stone (S. J.), P. J., and Gilbert, J., concurred.