[No. S098760. Dec. 2, 2002.]

TIMOTHY L. SMITH, Plaintiff and Appellant, v.
RAE-VENTER LAW GROUP, Defendant and Appellant.

346

**COUNSEL**

Timothy L. Smith, in pro. per.; Law Offices of Ellen Lake, Ellen Lake; Norland & Kays and Gregg L. Kays for Plaintiff and Appellant.

Miles E. Locker for the Division of Labor Standards Enforcement as Amicus Curiae on behalf of Plaintiff and Appellant.

Michael Gaitley and David Pogrel for The Legal Aid Society-Employment Law Center as Amicus Curiae on behalf of Plaintiff and Appellant.

Cynthia Rice and Michael Meuter for California Rural Legal Assistance, Inc., as Amicus Curiae on behalf of Plaintiff and Appellant.

Genevie Gallegaos for La Raza Centro Legal, Inc., as Amicus Curiae on behalf of Plaintiff and Appellant.

Marci Seville and Donna Ryu for Women's Employment Rights Clinic as Amicus Curiae on behalf of Plaintiff and Appellant.

Helen Yu-chuin Chen for Asian Law Caucus as Amicus Curiae on behalf of Plaintiff and Appellant.

Margaret Stevenson and Ellen Braff Fuajardo for East Palo Alto Community Law Project as Amicus Curiae on behalf of Plaintiff and Appellant.

Marcela Siderman for Legal Aid Foundation of Los Angeles as Amicus Curiae on behalf of Plaintiff and Appellant.

Gus T. May, Marc L. Bender and Cassandra Stubbs for Bet Tzedek Legal Services as Amicus Curiae on behalf of Plaintiff and Appellant.

Curiale Dellaverson Hirschfield Kelly & Kraemer, Curiale Dellaverson Hirschfield Kraemer & Sloan, Stephen J. Hirschfield, Felicia R. Reid and Donna M. Rutter for Defendant and Appellant.

Paul, Hastings, Janofsky & Walker, Paul Grossman, George W. Abele and Deborah S. Weiser for California Employment Law Council as Amicus Curiae on behalf of Defendant and Appellant.

Mitchell Silberberg & Knupp, William L. Cole, Lawrence A. Michaels, Kevin E. Gaut; Law Office of Steven Drapkin and Steven Drapkin for the Employers Group as Amicus Curiae on behalf of Defendant and Appellant.

## OPINION

**BAXTER, J.**—"If an employer fails to pay wages in the amount, time, or manner required by contract or by statute, the employee has two principal options. The employee may seek judicial relief by filing an ordinary civil action against the employer for breach of contract and/or for the wages prescribed by statute. (Lab. Code, §§ 218, 1194.) Or the employee may seek administrative relief by filing a wage claim with the [California Labor Commissioner] pursuant to a special statutory scheme codified in sections 98 to 98.8," commonly known as a Berman hearing. (*Cuadra v. Millan* (1998) 17 Cal.4th 855, 858 [72 Cal.Rptr.2d 687, 952 P.2d 704], italics omitted.) Where the administrative remedy is pursued, both parties have the right to appeal the decision of the Labor Commissioner (commissioner) to the trial court. (Lab. Code, § 98.2, subd. (a).)[1] In the event such an appeal is taken, section 98.2, subdivision (c) (section 98.2(c)) provides that the court shall assess costs and reasonable attorney fees against an appellant who "is unsuccessful in the appeal." The purpose of this fee-shifting provision is to discourage frivolous and meritless appeals from the commissioner's decisions.

We granted review to settle a conflict between this case and earlier reported decisions on the meaning and nature of the requirement that the appealing party be "unsuccessful in the appeal" in order for the fee-shifting provision to take effect. The earlier cases, decided in the context of employer appeals but stating a rule that has been applied in both employer and employee appeals, hold that the fee-shifting provision becomes operative only when the judgment of the trial court completely eliminates the commissioner's administrative award. (*Cardenas v. Mission Industries* (1991) 226 Cal.App.3d 952, 960 [277 Cal.Rptr. 247] (*Cardenas*); see also *Triad Data Services, Inc. v. Jackson* (1984) 153 Cal.App.3d Supp. 1 [200 Cal.Rptr. 418] (*Triad*).) The Court of Appeal below rejected that test, concluding instead that a party (either employer or employee) who seeks review of a commissioner's award is successful in the appeal when the resulting judgment is

---

[1] All further statutory references are to this code unless otherwise noted.

more favorable to that party than was the administrative award from which the appeal was taken.

We conclude that the rationale of the Court of Appeal's decision is substantially sound but that the judgment must be reversed to modify the disposition. The construction of section 98.2(c) that the Court of Appeal adopted (comparison of the resulting judgment with the administrative award from which the appeal was taken to determine whether the appealing party was unsuccessful for fee-shifting purposes) represents a clear break from the construction given the statute in *Triad* and *Cardenas* (fee-shifting provision becomes operative only when the judgment of the trial court completely eliminates the commissioner's administrative award). This latter standard appears to have been uniformly applied until the Court of Appeal's decision in this case. Although the general rule is that judicial decisions are to be given retroactive effect, there is a recognized exception when a decision changes a settled rule on which the parties below have relied. (See, e.g., *Brennan v. Tremco Inc.* (2001) 25 Cal.4th 310, 318 [105 Cal.Rptr.2d 790, 20 P.3d 1086]; *Droeger v. Friedman, Sloan & Ross* (1991) 54 Cal.3d 26, 45 [283 Cal.Rptr. 584, 812 P.2d 931]; *Woods v. Young* (1991) 53 Cal.3d 315, 329-331 [279 Cal.Rptr. 613, 807 P.2d 455].) Because plaintiff in this case, and perhaps others similarly situated, relied on the rule announced in *Triad* and *Cardenas* in electing to appeal the commissioner's award to the trial court, our holding parting company with that rule will be applied prospectively only to those appeals from the commissioner's decisions filed in the trial court after the date this decision becomes final.

FACTUAL AND PROCEDURAL BACKGROUND

The Court of Appeal found the following facts, most of which are drawn from the record of the trial de novo, relevant to the issues raised on appeal. Rae-Venter Law Group (RVLG), a small law firm specializing in biotechnology patent law, was founded in September 1995 by Attorney Barbara Rae-Venter, who was the firm's sole shareholder. Timothy L. Smith, then a recent law school graduate with a Ph.D. in molecular biology, joined RVLG at its inception as an associate attorney. Smith resigned his employment with RVLG one year later, in September 1996. During that year, he and Rae-Venter were the only attorneys at RVLG. In his letter of resignation, Smith asked RVLG to pay him for four weeks of accrued vacation time and to reimburse him for certain business expenses and for health insurance.

RVLG responded with a written memorandum in which it disputed both Smith's claim for vacation wages and his business expense claim. RVLG did reimburse Smith for health insurance premiums, as demanded.

Unhappy with RVLG's resolution of his demands, Smith filed a wage claim with the Department of Labor Standards Enforcement (i.e., the commissioner). In October 1996, the commissioner gave RVLG notice of Smith's claims. That notice repeated Smith's claims for vacation wages and for reimbursement of business expenses. In addition, Smith claimed entitlement to unpaid bonuses and reimbursement for a miscellaneous deduction taken from his final paycheck. Later, in June 1997, the commissioner filed a formal complaint on Smith's behalf. Like the earlier notice, the complaint sought reimbursement for claimed business expenses and for the miscellaneous deduction from Smith's final pay. The complaint also repeated Smith's earlier demand for vacation and bonus wages, although in somewhat higher amounts, and in addition included a new claim for reimbursement of periodic unemployment insurance deductions mistakenly deducted from Smith's wages due to a payroll computer program error. The complaint also sought "waiting time" penalties and prejudgment interest. (§§ 203, 98.1.)

In late August 1997, a Labor Commission hearing officer heard Smith's complaint. On September 3, 1997, the hearing officer made an award to Smith totaling $8,878.57. The award included $6,865.31 in wages, representing payment for four weeks of vacation together with reimbursement for the unemployment insurance deductions; statutory interest on those wages, which amounted to $632.94; and $1,380.32, the amount Smith sought for unpaid business expenses. The hearing officer denied Smith's other claims, including his claim for $12,000 in bonuses. The hearing officer further determined that no waiting time penalties were due because a bona fide dispute existed between the parties regarding Smith's wage claims. Within 10 days, RVLG sent the commissioner a cashier's check made payable to Smith for $8,878.57, the full amount of the award. One week later, on September 19, 1997, Smith filed his notice of appeal, seeking a trial de novo on his claims. Because Smith had appealed, the commissioner returned RVLG's check.

On February 5 and 6, 1998, a two-day court trial de novo was conducted in the Santa Clara County Superior Court. In his trial brief, Smith listed his claimed damages, which included unpaid vacation and bonus wages, unreimbursed business expenses, and unauthorized deductions from his pay, plus interest on all of those amounts. He also sought statutory waiting time penalties. (§ 203.) At trial, both parties submitted testimonial and documentary evidence and written and oral argument. On February 17, 1998, the court filed a memorandum of decision concluding Smith was entitled to payment for vacation wages and reimbursement both for the unemployment insurance deductions and for the unreimbursed business expenses, together with interest on all of those amounts from the date of his resignation. Like

the commissioner, the court rejected Smith's claims for $12,000 in bonuses, $411.54 for a miscellaneous deduction from his final paycheck, and $9,966.40 in waiting time penalties.

In short, the commissioner's award and the judgment Smith recovered in the trial de novo were identical in all respects save one. The amounts awarded in each forum for vacation pay, reimbursement of business expenses, and reimbursement for the erroneous unemployment insurance deductions were identical. Smith's remaining claims for merit bonuses, for reimbursement for the miscellaneous deduction taken from his final paycheck, and for statutory waiting time penalties were rejected in both forums. The only difference between the administrative and judicial awards was that the trial court awarded Smith interest on the entire amount of its $8,245.63 judgment, whereas the commissioner at that time could award interest on the wage claim but not the claim for unreimbursed business expenses. The difference in the prejudgment interest awards in each forum was approximately $230.

RVLG challenged the trial court's decision to award Smith interest on his nonwage claims (the unreimbursed business expenses) and also made a posttrial motion for statutory attorney fees and costs under section 98.2(c). In April 1998, the trial court issued a formal order after hearing. The court overruled RVLG's objections to the memorandum of decision regarding prejudgment interest and denied RVLG's motion for fees and costs on the ground that Smith's appeal was successful because he had obtained a judgment in his favor. Judgment was entered on May 4, 1998. RVLG appealed from the posttrial order denying its motion for attorney fees and costs under section 98.2(c). Smith cross-appealed from that part of the judgment denying him waiting time penalties.

On Smith's cross-appeal, the Court of Appeal determined that the question whether the trial court erred in denying Smith statutory waiting time penalties (§ 203) turned on the resolution of disputed factual issues.[2] Under the applicable substantial evidence standard of review (see *Nordquist v. McGraw-Hill Broadcasting Co.* (1995) 32 Cal.App.4th 555, 561 [38 Cal.Rptr.2d 221]; *Cardenas, supra,* 226 Cal.App.3d at pp. 958-959), the court found that substantial evidence supported the trial court's findings that RVLG had acted in good faith in disputing Smith's claims for vacation pay, and in not offering to reimburse him sooner for the unemployment insurance

---

[2]Section 203 provides that if an employer *willfully* fails to pay an employee's final wages when due, the employer is subject to statutory waiting time penalties.

deductions mistakenly deducted from his paycheck.[3] The Court of Appeal therefore affirmed that portion of the trial court's judgment denying Smith waiting time penalties.[4]

On RVLG's appeal from the denial of its motion for fees and costs under section 98.2(c), the Court of Appeal concluded that plaintiff failed to show he was successful in the appeal because the commissioner's award and the trial court's judgment were identical in dollar amount and in elements of damage, notwithstanding that the award did not include prejudgment interest on plaintiff's nonwage claims and the judgment did. The court held that because the purpose of section 98.2(c) is to discourage meritless appeals of the commissioner's awards, the party seeking review should be deemed unsuccessful in the appeal unless the resulting judgment is more favorable to that party than was the administrative award. With specific regard to Smith's appeal, the Court of Appeal determined that success in such an employee appeal requires some incremental improvement over the commissioner's award in order to avoid implementation of the fee-shifting provision. The court further held that success in the trial de novo should be assessed after excluding costs or damages that result solely from continuation of the litigation on appeal. The Court of Appeal reversed and remanded with directions to the trial court to redetermine whether plaintiff was "unsuccessful in the appeal" within the meaning of section 98.2(c) as thus construed.

We granted review to settle the conflict between this case and earlier reported decisions (*Triad, supra,* 153 Cal.App.3d Supp. 1; *Cardenas, supra,* 226 Cal.App.3d 952) on the meaning and nature of the requirement that the appealing party be found "unsuccessful in the appeal" in order for the fee-shifting provision to become operative.[5]

## DISCUSSION

### *Fee-shifting provision (§ 98.2(c))*

RVLG urged on appeal that it was entitled to statutory attorney fees and costs. That in turn depends on whether Smith was "unsuccessful in [his]

---

[3]"[A] good faith dispute that any wages are due will preclude imposition of waiting time penalties under Section 203." (Cal. Code Regs., tit. 8, § 13520.)

[4]Having reviewed the record of the trial de novo, we agree that the issue regarding statutory waiting time penalties turned largely on the resolution of disputed facts, and that substantial evidence supports the trial court's denial of Smith's claim for waiting time penalties. Accordingly, we shall not revisit that portion of the Court of Appeal's judgment affirming the trial court's denial of waiting time penalties on Smith's cross-appeal.

[5]An amicus curiae brief in support of Smith on the fee-shifting issue has been jointly filed by the Legal Aid Society-Employment Law Center, California Rural Legal Assistance, Inc., and several other interested nonparties. The Division of Labor Standards and Enforcement has likewise filed an amicus curiae brief in support of Smith.

appeal" from the commissioner's decision within the meaning of that term as used in section 98.2(c).

1. *Overview of Berman hearing procedure*

We begin with a brief review of the procedural context in which this dispute arose. As previously noted, under the Labor Code, "If an employer fails to pay wages in the amount, time or manner required by contract or by statute, the employee has two principal options. The employee may seek *judicial* relief by filing an ordinary civil action against the employer for breach of contract and/or for the wages prescribed by statute. (§§ 218, 1194.) Or the employee may seek *administrative* relief by filing a wage claim with the commissioner pursuant to a special statutory scheme codified in sections 98 to 98.8." (*Cuadra v. Millan, supra,* 17 Cal.4th at p. 858, disapproved on another ground in *Samuels v. Mix* (1999) 22 Cal.4th 1, 16, fn. 4 [91 Cal.Rptr.2d 273, 989 P.2d 701].)

The commissioner, who is Chief of the Division of Labor Standards Enforcement (§ 21), has broad authority to investigate employee complaints and to conduct hearings in actions "to recover wages, penalties, and other demands for compensation . . . ." (§ 98, subd. (a).) Recently, in *Post v. Palo/Haklar & Associates* (2000) 23 Cal.4th 942, 946-948 [98 Cal.Rptr.2d 671, 4 P.3d 928], we summarized the key statutory procedures that govern wage order claims filed with the commissioner:

"The commissioner may investigate complaints; his or her powers include the right to make inspections, subpoena witnesses and documents, and conduct examinations of witnesses. (See Lab. Code, §§ 74, 92.) Within 30 days of the filing of a complaint, the commissioner must notify parties as to whether he or she will take further action. (*Id.,* § 98, subd. (a).) The statute provides for three alternatives: the commissioner may either accept the matter and conduct an administrative hearing (see *id.,* §§ 98-98.2), prosecute a civil action for the collection of wages and other money payable to employees arising out of an employment relationship (see *id.,* § 98.3), or take no further action on the complaint. (*Id.,* § 98, subd. (a).)

"If the commissioner decides to accept the matter and conduct an administrative hearing—commonly known as a 'Berman hearing' after the name of its sponsor, then Assemblyman Howard Berman—he or she must hold the hearing within 90 days, although he or she has discretion to 'postpone or grant additional time before setting a hearing if the [commissioner] finds that it would lead to an equitable and just resolution of the dispute.' (Lab. Code, § 98, subd. (a).)

"Labor Code section 98, subdivision (a), expressly declares the legislative intent that hearings be conducted 'in an informal setting preserving the right of the parties.' The Berman hearing procedure is designed to provide a speedy, informal, and affordable method of resolving wage claims. (*Cuadra v. Millan, supra,* 17 Cal.4th at p. 858.) As we explained in *Cuadra,* 'the purpose of the Berman hearing procedure is to avoid recourse to costly and time-consuming judicial proceedings in all but the most complex of wage claims.' (*Id.* at p. 869.)

"The commissioner is required to determine all matters arising under his or her jurisdiction, including questions concerning the employment status of the claimant. (Lab. Code, § 98, subd. (a); see also *Resnik v. Anderson & Miles* (1980) 109 Cal.App.3d 569, 572 [167 Cal.Rptr. 340] ['Labor Code sections 96 and 98, subdivision (a), expressly allow the [commissioner] to take assignment of employee claims with the authority to resolve all matters within its jurisdiction.'].) Indeed, as a predicate for awarding a claim for unpaid wages, the commissioner must necessarily determine that the claimant was an employee. (1 Wilcox, Cal. Employment Law (2000) § 1.04[1] [a], p. 1-9 ['An employment relationship must exist in order for the California wage orders or the provisions of the Labor Code governing wages . . . to be applicable.' (Fn. omitted.)].)

"Within 15 days after the Berman hearing is concluded, the commissioner must file a copy of his or her order, decision, or award and serve notice thereof on the parties. (Lab. Code, § 98.1.) The order, decision, or award must include a summary of the hearing and the reasons for the decision, and must advise the parties of their right to appeal. (*Ibid.*)

"Within 10 days after service of notice, the parties may seek review by filing an appeal to the municipal or superior court 'in accordance with the appropriate rules of jurisdiction, where the appeal shall be heard de novo.' (Labor Code, § 98.2, subd. (a).) The timely filing of a notice of appeal forestalls the commissioner's decision, terminates his or her jurisdiction, and vests jurisdiction to conduct a hearing de novo in the appropriate court. (*Pressler v. Donald L. Bren Co.* (1982) 32 Cal.3d 831, 835 [187 Cal.Rptr. 449, 654 P.2d 219].) If no party takes an appeal, the commissioner's decision will be deemed a judgment, final immediately and enforceable as a judgment in a civil action. (Lab. Code, § 98.2, subd. (a); see generally 1 Wilcox, Cal. Employment Law, *supra,* §§ 5.10 to 5.19, pp. 5-18 to 5-52.)

■ "Although denoted an 'appeal,' unlike a conventional appeal in a civil action, hearing under the Labor Code is de novo. (Lab. Code, § 98.2, subd. (a).) ' "A hearing de novo [under Labor Code section 98.2] literally

means a new hearing," that is, a new trial.' (*Pressler v. Donald L. Bren Co.,* *supra,* 32 Cal.3d at p. 835.) The decision of the commissioner is 'entitled to no weight whatsoever, and the proceedings are truly "a trial anew in the fullest sense." ' (*Sales Dimensions v. Superior Court* (1979) 90 Cal.App.3d 757, 763 [153 Cal.Rptr. 690].) The decision of the trial court, after de novo hearing, is subject to a conventional appeal to an appropriate appellate court. (1 Wilcox, Cal. Employment Law, *supra,* § 5.18[2] [a], p. 5-46.) Review is of the facts presented to the trial court, which may include entirely new evidence. (See *Nordquist v. McGraw-Hill Broadcasting Co.*[*, supra,*] 32 Cal.App.4th 555, 561 . . . ; 1 Wilcox, Cal. Employment Law, *supra,* § 5.18[3], p. 5-49.)" (*Post v. Palo/Haklar & Associates, supra,* 23 Cal.4th at pp. 946-948.)

Section 98.2(c) provides for an award of attorney fees and costs against a party who appeals the commissioner's award through a trial de novo in the superior court and "is unsuccessful in the appeal." (§ 98.2(c).)[6] Our task then is to construe this fee-shifting provision, which each party interprets differently, particularly, as here, in the context of an employee's appeal of a commissioner's award partially in his or her favor. Because the issue involves the proper interpretation of a statute and its application to undisputed facts, we do so through independent review. (Cf. *Californians for Population Stabilization v. Hewlett-Packard Co.* (1997) 58 Cal.App.4th 273, 294 [67 Cal.Rptr.2d 621] ["The interpretation of this attorney's fees statute [§ 218.5] and its application to the circumstances in this case are questions of law, subject to independent review on appeal"].)

### 2. *RVLG's entitlement to attorney fees and costs*

Section 98.2(c) provides that the trial court "shall" assess costs and reasonable attorney fees against an appellant who is unsuccessful in the appeal. As used in the Labor Code, "shall" is mandatory. (§ 15; see *Morris v. County of Marin* (1977) 18 Cal.3d 901, 908 [136 Cal.Rptr. 251, 559 P.2d 606] [construing § 3800].)

The parties disagree on whether Smith was unsuccessful in the appeal, as that term is used in the fee-shifting statute. Smith asserts that his appeal was

---

[6]Section 98.2(c) provides in full: "If the party seeking review by filing an appeal to the municipal or superior court is unsuccessful in the appeal, the court shall determine the costs and reasonable attorney's fees incurred by the other parties to the appeal, and assess that amount as a cost upon the party filing the appeal." Section 98.2 was amended effective January 1, 2001. (Stats. 2000, ch. 876, § 2.) Former subdivision (b) of section 98.2, which was in effect in 1997 during the course of the proceedings below, was redesignated with no change as subdivision (c). For clarity, all references herein are to the current designation of the fee-shifting provision, section 98.2(c).

successful because he won a judgment in the trial de novo; he argues it is irrelevant whether the trial court judgment reflects an improvement over the commissioner's award. Smith further urges that, in any event, his judgment is more favorable than the commissioner's award because it includes interest (approximately $230) on his reimbursable business expense claims. RVLG disagrees and asserts that the Court of Appeal correctly determined that success in the appeal requires the appellant to achieve a more favorable result at trial, something the Court of Appeal found Smith failed to do in this case, notwithstanding the award of interest on the nonwage items included in the trial court's judgment.

    a.   *Legislative intent and legislative history behind section 98.2(c)*

■  "Initially, '[a]s in any case of statutory interpretation, our task is to determine afresh the intent of the Legislature by construing in context the language of the statute.' (*Harris v. Capital Growth Investors XIV* (1991) 52 Cal.3d 1142, 1159 [278 Cal.Rptr. 614, 805 P.2d 873].) In determining such intent, we begin with the language of the statute itself. (*Rojo v. Kliger* (1990) 52 Cal.3d 65, 73 [276 Cal.Rptr. 130, 801 P.2d 373].) That is, we look first to the words the Legislature used, giving them their usual and ordinary meaning. (*City of Santa Cruz v. Municipal Court* (1989) 49 Cal.3d 74, 90 [260 Cal.Rptr. 520, 776 P.2d 222].) 'If there is no ambiguity in the language of the statute, "then the Legislature is presumed to have meant what it said, and the plain meaning of the language governs." ' (*Lennane v. Franchise Tax Bd.* (1994) 9 Cal.4th 263, 268 [36 Cal.Rptr.2d 563, 885 P.2d 976].)" (*People v. Superior Court (Zamudio)* (2000) 23 Cal.4th 183, 192 [96 Cal.Rptr.2d 463, 999 P.2d 686].)

Section 98.2(c) does not expressly define when or under what circumstances a party is "unsuccessful in the appeal" from a commissioner's decision and award. RVLG urged below that the statutory language on its face has a plain and unambiguous meaning, but the Court of Appeal disagreed, observing that the very fact that courts have split on the issue and reached contradictory conclusions regarding the interpretation and meaning of section 98.2(c) (compare *Triad, supra,* 153 Cal.App.3d at pp. Supp. 13-15 (maj. opn.) with *id.* at pp. Supp. 28-33 (dis. opn. of Foster, P. J.)) itself suggests the relevant statutory language is ambiguous.

We agree with the Court of Appeal. ■  This is a case in which "the language of the relevant statutes does not provide a ready answer." (*Lundquist v. Reusser* (1994) 7 Cal.4th 1193, 1205 [31 Cal.Rptr.2d 776, 875 P.2d 1279].) Accordingly, we must determine the meaning of the phrase "unsuccessful in the appeal" as it appears in section 98.2(c), giving due

consideration to its statutory context. (See *Hodges v. Superior Court* (1999) 21 Cal.4th 109, 114 [86 Cal.Rptr.2d 884, 980 P.2d 433].) To this end, we examine the legislative purpose in enacting the fee and cost-shifting provision. (*Dyna-Med, Inc. v. Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1387 [241 Cal.Rptr. 67, 743 P.2d 1323].) We can also look to the legislative history of the enactment (*id.* at pp. 1386-1387; *Californians for Population Stabilization v. Hewlett-Packard Co., supra,* 58 Cal.App.4th at p. 295), which further demonstrates that its purpose is to discourage frivolous and nonmeritorious appeals from the commissioner's decisions.

Recently, in *Lolley v. Campbell* (2002) 28 Cal.4th 367 [121 Cal.Rptr.2d 571, 48 P.3d 1128], we construed section 98.2(c) to determine whether a trial court may assess attorney fees against an employer who unsuccessfully appeals an administrative order to pay wages if the employee cannot afford counsel and is represented without charge by the commissioner. We observed that the legislative purpose behind section 98.2 (c) is to "discourag[e] unmeritorious appeals of wage claims, thereby reducing the costs and delays of prolonged disputes, by imposing the full costs of litigation on the unsuccessful appellant. (*Dawson v. Westerly Investigations, Inc.* (1988) 204 Cal.App.3d Supp. 20, 24 [251 Cal.Rptr. 633] [the purpose of section 98.2, subdivision (c) is 'to discourage meritless and unwarranted appeals by assessing costs and attorneys' fees against unsuccessful appellants' (italics omitted)]; see also *Nordquist v. McGraw-Hill Broadcasting Co.* (1995) 32 Cal.App.4th 555, 575 . . . [these provisions were intended to provide 'disincentives to discourage meritless and unwarranted appeals'].) Discouraging meritless appeals is consonant with the general purpose of section 98 et seq., noted above, to 'provide a speedy, informal, and affordable method of resolving wage claims.' (*Cuadra v. Millan, supra,* 17 Cal.4th 855, 858.)" (*Lolley, supra,* 28 Cal.4th at p. 376; accord, *California Chamber of Commerce v. Simpson* (C.D.Cal. 1985) 601 F.Supp. 104, 108 ["This provision clearly is intended to discourage appeal from the Labor Commissioner's award . . . ."].)

The Court of Appeal granted RVLG's request for judicial notice of documents bearing on the legislative history of section 98.2(c), which was first added to the Labor Code in 1980 as subdivision (b) by Senate Bill No. 1397 (1979-1980 Reg. Sess.). Among the documents the court judicially noticed were the analysis of Senate Bill No. 1397 prepared for the Assembly Committee on Labor, Employment, and Consumer Affairs, dated June 17, 1980, and the Enrolled Bill Memorandum to the Governor regarding Senate Bill No. 1397, dated July 11, 1980.[7] As the court observed, both of those documents state: "The purpose of this bill is to reduce frivolous and nonmeritorious appeals of the Labor Commissioner's decisions regarding payment of wages."

---

[7]We have likewise granted RVLG's request in this court to take judicial notice of these same legislative history materials.

As past cases have recognized, and the legislative history of section 98.2(c) confirms, the purpose of the fee-shifting provision is to promote the finality of the commissioner's awards. The statute discourages unmeritorious appeals to the courts by requiring that the unsuccessful appellant shoulder respondent's costs in defending the appeal. As in the Court of Appeal, Smith urges us to instead focus on important "countervailing" policies in the Labor Code, particularly the overriding policy requiring the prompt payment of wages. Of course "the prompt payment of wages due an employee is a fundamental public policy of this state" (*Gould v. Maryland Sound Industries, Inc.* (1995) 31 Cal.App.4th 1137, 1147 [37 Cal.Rptr.2d 718], citing *Pressler v. Donald L. Bren Co., supra,* 32 Cal.3d at p. 837), and the Legislature clearly had that important public policy in mind in enacting various provisions of the Labor Code. (*Gould v. Maryland Sound Industries, Inc., supra,* at p. 1147; see, e.g., §§ 201-203, 216.) But while various provisions of the Labor Code indisputably have employee protection and the prompt payment of wages as their paramount purpose, we agree with the Court of Appeal that the fee-shifting provisions of section 98.2(c) are not among them. Once again, the specific purpose behind those provisions is the promotion of the finality of the commissioner's decisions and awards by discouraging frivolous appeals to the courts by either party.

In any case, as the Court of Appeal recognized below, the policy promoting the prompt payment of wages *was* vindicated in this case. Once the commissioner determined what Smith was owed, RVLG promptly tendered payment in full in compliance with the statutory requirement, but Smith refused the payment and instead sought a trial de novo in the superior court. Thus, the situation in this case is not one in which the *employer* "further delayed the wages due the [employee]" by taking an appeal from the commissioner's award. (*Triad, supra,* 153 Cal.App.3d at p. Supp. 14.) To the contrary, in the factual context of this case, there is no conflict between the policy requiring the prompt payment of wages and the policy of promoting the finality of the commissioner's awards through the fee-shifting provision here in issue.

■ Smith also renews his assertion in the Court of Appeal that "the public policy underlying the statute is protection of the employee, not the employer." Based on that assertion, he urged the Court of Appeal to find that the test by which a party is found "unsuccessful in the appeal" under section 98.2(c) may vary "depending on whether the party seeking judicial review is the employer or the employee." If the employee appeals the award to the courts, the appeal will not be deemed unsuccessful as long as he or she obtains a judgment, whether more or less than the administrative award—in theory, even a judgment of one dollar. In contrast, if the employer appeals,

the appeal will be deemed unsuccessful unless the employer succeeds in overturning the award in its entirety. (See *Cardenas, supra,* 226 Cal.App.3d at p. 960.)

We disagree. As the Court of Appeal observed, the fee-shifting provision in question "neither compels nor warrants the unequal treatment of employers and employees." That conclusion follows from the plain language of section 98.2(c), which makes no explicit distinction between employee and employer appeals but simply authorizes the shifting of fees and costs to the unsuccessful "party filing the appeal." We recognized this in *Murillo v. Fleetwood Enterprises, Inc.* (1998) 17 Cal.4th 985, 997 [73 Cal.Rptr.2d 682, 953 P.2d 858], wherein we observed that "[b]ecause Labor Code section 98.2 addresses the ability of both sides [employers and employees alike] to recover their costs, it comprises an express exception to [Code of Civil Procedure] section 1032 [, subdivision] (b) [which sets forth the general rule that prevailing parties shall recover their costs]."

Moreover, as the Court of Appeal further observed, through "recent amendments to section 98.2, the Legislature imposed certain bonding requirements that are applicable only to employer appeals. (§ 98.2, subd. (b); see Stats. 2000, ch. 876[,] § 2.) Yet in the very next paragraph of the statute, which contains the cost-shifting provisions at issue here, the Legislature made no distinction between employers and employees. That omission suggests a legislative intent to apply this cost-shifting provision evenhandedly, to employers and employees alike. Evenhanded application is consistent with the statute's policy. (Cf. *Bank of San Pedro v. Superior Court* (1992) 3 Cal.4th 797, 804-805 [12 Cal.Rptr.2d 696, 838 P.2d 218] ['Not to require an undertaking in this case would further thwart the policy of [Code of Civil Procedure] section 998 by creating an anomalous disparity between plaintiffs and defendants. . . . An evenhanded application of the requirement for an undertaking on appeal best effectuates the policy of encouraging settlements under section 998.']; see also *[Triad], supra,* 153 Cal.App.3d at p. Supp. 29 (dis. opn. of Foster, P. J.) ['Nothing in the statute or the legislative history suggests that the Legislature in enacting section 98.2, subdivision [(c)], intended that it operate unilaterally against employers or that it was designed to serve the purpose of preventing the withholding of "just wages due a discharged or terminated employee." To the contrary, the apparent purpose of it is to give force and effect to the Labor Commissioner's award by discouraging either party from appealing from the award on other than meritorious grounds.' (Fn. omitted.)].)"

In sum, the purpose and intent behind section 98.2(c) is to discourage frivolous and unmeritorious appeals from the commissioner's awards, regardless of whether they are taken by employers or employees. With that

legislative purpose in mind, we next briefly examine two statutory fee-shifting schemes, which RVLG urged the Court of Appeal to find analogous to section 98.2(c), to see if those statutes can shed any light on our inquiry into the manner in which the Legislature intended section 98.2(c) to operate.

### b. *Analogous fee-shifting statutes*

The statutory scheme governing judicial arbitrations contains a one-sided fee-shifting provision similar to that found in section 98.2(c). (See Code Civ. Proc., § 1141.10 et seq.; see generally Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2002) ch. 13, Judicial Arbitration and Mediation, pp. 13-1 to 13-81.) Like a wage order claimant unsatisfied with a commissioner's award, a party who is dissatisfied with a judicial arbitration award may opt for a trial de novo. (Code Civ. Proc., § 1141.20.) In the de novo proceedings following judicial arbitration, as in a trial de novo following appeal of a commissioner's award, the case is tried "as though no arbitration proceedings had occurred." (Cal. Rules of Court, rule 1616(c); Code Civ. Proc., § 1141.25; *Weber v. Kessler* (1981) 126 Cal.App.3d 1033, 1036-1037 [179 Cal.Rptr. 299].)

Under the fee- and cost-shifting provision of the judicial arbitration statute, a party who requests a trial de novo and fails to obtain a judgment "more favorable in either the amount of damages awarded or the type of relief granted" must pay the opposing party's costs and attorney fees to the extent authorized by contract or statute. (Code Civ. Proc., § 1141.21, subd. (a).) "The trial de novo provides the losing party with yet another chance to present its case, but that party also assumes a risk by requesting the trial: if the judgment for the party electing the trial de novo is not more favorable, either in the amount of damages awarded or the type of relief sought, than was the arbitration award, that party must reimburse the county for the compensation paid to the arbitrator, as well as paying the opposing party the costs it has incurred as a result of the trial." (*Weber v. Kessler, supra,* 126 Cal.App.3d at p. 1036.)

The fee-shifting provision of the judicial arbitration statute is therefore intended to "encourage parties to accept reasonable arbitration awards," and "to discourage trials de novo" (*Phelps v. Stostad* (1997) 16 Cal.4th 23, 29 [65 Cal.Rptr.2d 360, 939 P.2d 760]), much like the fee and cost-shifting provision of section 98.2(c) is intended to discourage frivolous appeals from the commissioner's awards. "The Legislature has clearly enacted a policy of encouraging the parties to accept arbitration awards. The legislative policy promotes judicial economy in a world of limited courtroom space and limited tax dollars." (*Bhullar v. Tayyab* (1996) 46 Cal.App.4th 582, 589-590 [54 Cal.Rptr.2d 17].)

The legislative scheme governing statutory settlement offers also contains a one-sided fee-shifting provision similar in many respects to that found in section 98.2(c). If a plaintiff does not accept a defendant's statutory settlement offer and then "fails to obtain a more favorable judgment or award, the plaintiff shall not recover his or her postoffer costs and shall pay the defendant's costs from the time of the offer." (Code Civ. Proc., § 998, subd. (c)(1).) "As recognized in numerous California decisions, the clear purpose of [Code of Civil Procedure] section 998 . . . is to encourage the settlement of lawsuits prior to trial, and penalize litigants who fail to accept what, in retrospect, is determined to have been a reasonable settlement offer." (*Bodell Construction Co. v. Trustees of Cal. State University* (1998) 62 Cal.App.4th 1508, 1518 [73 Cal.Rptr.2d 450], fn. omitted. citing *Bank of San Pedro v. Superior Court, supra,* 3 Cal.4th at p. 804.)

As the Court of Appeal in this case reasoned, the fee- and cost-shifting provisions of Code of Civil Procedure sections 998 and 1141.21 are each intended to discourage unnecessary trials in much the same way that section 98.2(c) is designed to discourage unmeritorious appeals of the commissioner's decisions to the courts. Like section 98.2(c), the judicial arbitration fee and cost-shifting provision affords a party dissatisfied with his or her arbitration award the option of a trial de novo, but if the ensuing judgment is not more favorable than was the arbitration award, the court shall order that party to pay the other side's fees and costs. (Code Civ. Proc., § 1141.21, subd. (a).) Notably, in applying the "more favorable judgment" standard, even though a party appealing an arbitration award obtains a trial de novo, the court must compare the award to the ultimate judgment to determine the nonappealing party's entitlement to fees and costs. (*Weber v. Kessler, supra,* 126 Cal.App.3d at p. 1036.) Similarly, when a plaintiff rejects a defendant's statutory settlement offer and then fails to obtain a more favorable judgment at trial, the plaintiff may not recover postoffer costs and becomes liable for the defendant's costs from the time of the offer. (Code Civ. Proc., § 998, subd. (c)(1).)

Smith argued in the Court of Appeal that these three statutes cannot be validly compared because the Legislature failed to use precisely the same language in section 98.2(c) as it did in the Code of Civil Procedure sections. He renews the point in this court. It is true that the Legislature employed different terminology in the judicial arbitration and statutory settlement cost-shifting schemes. Under those statutes, cost shifting is triggered when the de novo trial court judgment is "more favorable" than the rejected settlement offer or arbitration award (Code Civ. Proc., §§ 998, subds. (c)-(e), 1141.21), whereas under section 98.2(c), cost shifting is mandated when the party rejecting the commissioner's award is "unsuccessful in the appeal."

■ Smith urged the Court of Appeal to invoke the " 'well recognized principle of statutory construction that when the Legislature has carefully employed a term in one place and has excluded it in another, it should not be implied where excluded.' " (*Brown v. Kelly Broadcasting Co.* (1989) 48 Cal.3d 711, 725 [257 Cal.Rptr. 708, 771 P.2d 406], quoting *Ford Motor Co. v. County of Tulare* (1983) 145 Cal.App.3d 688, 691 [193 Cal.Rptr. 511].) But, as the court reasoned, that principle is inapplicable here, for it applies only when the Legislature has intentionally changed or excluded a term by design (*Ford Motor Co. v. County of Tulare, supra,* 145 Cal.App.3d at p. 691), and it is only when different terms are used in parts of the *same* statutory scheme that they are presumed to have different meanings. (*Brown v. Kelly Broadcasting Co., supra,* 48 Cal.3d at p. 725 [construing varying terminology in a single statute, Civ. Code, § 47].) We agree. In this instance, it does not appear that the Legislature's failure to use identical language in the judicial arbitration, statutory settlement and Labor Code fee-shifting provisions was either intentional or meaningful.

Smith also points to another distinction between section 98.2(c) and the two Code of Civil Procedure fee-shifting provisions described above: section 98.2(c) makes the fee assessment mandatory, whereas Code of Civil Procedure sections 998 and 1141.21 allow for exceptions in the interest of justice. But section 98.2(c)'s stricter mandatory fee-shifting provision is most likely attributable to the Legislature's stronger interest in promoting the finality of the commissioner's awards, given the correspondingly harsher disincentive to appeal them. It is difficult to see how this distinction between the fee-shifting provisions is availing to Smith's cause.

c. *Relevant case law: Triad and Cardenas*

Smith next argues that merely winning a judgment in the trial de novo constitutes success in the appeal, and whether or not that judgment represents an improvement over or decrease in the commissioner's award is irrelevant. He relies on two decisions in support of his position: *Triad, supra,* 153 Cal.App.3d Supp. 1, and *Cardenas, supra,* 226 Cal.App.3d 952. RVLG disagrees and urges that success in an appeal from a commissioner's decision requires a more favorable result at the trial de novo than at the administrative hearing. The Court of Appeal rejected the reasoning of *Cardenas* and *Triad* and adopted a "more favorable judgment" standard.

*Triad* was decided by the former appellate department of the Los Angeles Superior Court. (*Triad, supra,* 153 Cal.App.3d Supp. 1.) In that case the employee, a bookkeeper, was terminated less than three months after her employment status had been changed to a salaried employee pursuant to a

written employment agreement. (*Id.* at p. Supp. 5.) She filed a complaint with the commissioner and ultimately won an award that included $2,275 "for wages or compensation" and $2,310 for "waiting time." (153 Cal.App.3d at p. Supp. 6.) The employer elected a trial de novo in the municipal court, where judgment was entered for the employee as follows—a reduced amount ($1,631) for "principal," $1,000 for attorney fees, and $4,998 in treble punitive damages under section 206, subdivision (b). (153 Cal.App.3d at p. Supp. 6.) The employer appealed to the former appellate department of the superior court, which court entered a new judgment striking the award of treble punitive damages, "substituting" in its stead the sum of $1,666 as waiting time penalties under section 203, and otherwise affirming the award of attorney fees and costs to the nonappealing employee, even though the net judgment recovered by the employee in the trial de novo was less than she had recovered in the administrative hearing before the commissioner. (153 Cal.App.3d at p. Supp. 15.)

In its appeal to the former appellate department of the superior court, the employer in *Triad* sought "to establish . . . success in the trial de novo by comparing the judgment issued by the trial court with the award or decision of the commissioner." (*Triad, supra,* 153 Cal.App.3d at p. Supp. 14.) Over a vigorous dissent, the *Triad* majority rejected the employer's argument as without merit, concluding an employer seeking judicial review is "unsuccessful in the appeal" if trial de novo results in any judgment for the employee, even if it is lower than that which the commissioner originally awarded. As the *Triad* court put it: "the statutory language contained in section 98.2, subdivision (b) [now (c)] of 'unsuccessful in [the] appeal', should be given the inverse meaning to that of 'prevailing party' which is well settled in this state. The prevailing party is the party in whose favor final judgment is rendered. [Citation.] 'The general rule is that net recovery is the basis upon which attorneys' fees are computed. [Citation.]' [Citation.] We find that the defendant [employee] 'prevailed,' or, conversely, the plaintiff [employer] was 'unsuccessful' below. The trial judge properly granted attorney's fees and costs to defendant [employee] pursuant to . . . section 98.2." (*Triad, supra,* 153 Cal.App.3d at p. Supp. 15.)

In *Cardenas*, the Second District Court of Appeal, relying heavily on the majority decision in *Triad*, reached a similar conclusion. In that case the commissioner had awarded the employee overtime pay, waiting time penalties, and interest. (*Cardenas, supra,* 226 Cal.App.3d at pp. 955-956.) The employer opted for a trial de novo in the superior court, which court rendered a judgment for the employee *reducing* the compensation awarded by the commissioner for overtime pay, affirming the awards of waiting time penalties and interest, and adding an award of statutory attorney fees. (*Id.* at

p. 957.) On appeal, the employer contested the award of attorney fees, arguing that it was not "unsuccessful in the appeal" (§ 98.2(c)) for purposes of the fee statute "because the court's award of overtime pay was less than that of the Labor Commissioner . . . ." (226 Cal.App.3d at pp. 959-960.)

The *Cardenas* court rejected the employer's argument, holding as follows: "Appeal to a court of the Labor Commissioner's order is not an appeal in the usual sense; rather, it is a trial de novo. (. . . § 98.2 [, subd.] (a).) For an appellant to be considered the successful party when seeking judicial review of an award of the Labor Commissioner, the judgment of the trial court must completely eliminate the Labor Commissioner's prior award. (See *Triad Data Services, Inc.* v. *Jackson* [,*supra,*] 153 Cal.App.3d [at p. Supp. 14] . . . .) . . . [¶] In the present case, the judgment of the trial court was not in favor of [the employer]. The court found against [the employer] on all the issues in this case. The fact that the amount of overtime wages awarded by the Labor Commissioner was reduced by the trial court is irrelevant. [The employee] was the prevailing party." (*Cardenas, supra,* 226 Cal.App.3d at p. 960.)[8]

We first observe that *Cardenas* and *Triad* are factually distinguishable from the case before us since both decisions involved *employer* appeals. As the Court of Appeal below observed, "This distinction carries significant practical consequences. Although [section 98.2(c)] does not distinguish between [employer and employee appeals], and although appeals by either party in theory may slow wage payments, only employer appeals *involuntarily* delay payment. Even Smith acknowledges that an employee appeal 'does not thwart the overriding policy interest in making an employer pay wages when due.' To the extent that the reasoning of [*Cardenas* and *Triad*] derives from the fact that they were both employer appeals, their rationale is inapplicable here."

---

[8]It is noteworthy that under rule 26(a) of the California Rules of Court, which sets forth general rules for awarding costs on appeal, when an appeal results in the affirmance of the judgment appealed from, the *respondent* is deemed the prevailing party, and the appellant the unsuccessful party. On the other hand, where the judgment is reversed, in whole or in part, the appellant is the prevailing party and the respondent the unsuccessful party. (Cal. Rules of Court, rule 26(a)(1).) Smith's interpretation of section 98.2(c)—that *any* judgment he recovered in the de novo proceedings, even one equal to or less than the commissioner's award, renders him the prevailing party—is at odds with rule 26(a)(1)'s definition of "prevailing party" for purposes of awarding costs on appeal. In this case the trial court's judgment was substantially identical to the commissioner's award, except for the addition of approximately $230 of prejudgment interest on the nonwage items, which the commissioner was without authority to award in the Berman hearing below. Nor did Smith obtain a reversal on any claim the commissioner had decided against him. Therefore, for purposes of assessing costs on appeal, were rule 26(a)(1) applicable (but see *Murillo* v. *Fleetwood Enterprises, Inc, supra.* 17 Cal.4th at pp. 996-997 [Labor Code's cost-shifting scheme supplants general cost-shifting rules]), RVLG, and not Smith, would be deemed the prevailing party below.

This distinction was not lost on the dissenting judge in *Triad*. After observing that section 98.2, subdivision (a) explicitly contemplates that *either party* may appeal a decision of the commissioner, and that the purpose of section 98.2(c) is to provide for fee shifting against *either party* who unsuccessfully seeks review of such a decision, be it the employer or the employee, the dissenting judge in *Triad* explained: "The majority's interpretation of [section 98.2(c)] would not accomplish this purpose. Under that interpretation, an award of such sanctions against the employer is made to depend entirely upon whether in the trial de novo appeal the employee recovers any amount, no matter how small and no matter how much less than the award of the Labor Commissioner. In circumstances similar to the present case, in which the employer has appealed an admittedly unjustly high award, he is penalized for exercising his appeal rights by being compelled to pay the costs and attorneys' fees of the employee whose recovery has been properly reduced. In the converse circumstance, of an employee's appeal, an equally unjust result would follow. An employee dissatisfied with an award might appeal and, after a trial de novo, recover no greater, or even a far lesser sum, but under the majority's reasoning he would not be 'unsuccessful in such appeal.' The result of this reasoning is to penalize employers for taking meritorious appeals and to reward employees for taking unmeritorious ones." (*Triad, supra,* 153 Cal.App.3d at p. Supp. 30 (dis. opn. of Foster, P. J.).)

Apart from the factual differences between employer and employee appeals, the *Triad* and *Cardenas* courts further erred in concluding that the commissioner's decision must be entirely disregarded when applying the fee-shifting mandate of section 98.2(c). As a practical matter, whether the party electing a trial de novo after the commissioner issues a decision and award is successful in that "appeal" cannot be determined without comparing the trial court's judgment to the earlier administrative award from which the appeal was taken. On this point we again agree with the Court of Appeal below—the judicial arbitration statute provides an apt analogy: "In a trial de novo after judicial arbitration, the court 'hears the evidence and makes its decision based on that evidence. It is imperative in cases such as these that the trier of fact reach its decision independently and without any reference to the arbitrator's findings . . . .' (*Weber v. Kessler, supra,* 126 Cal.App.3d at p. 1036.) 'However, in order to comply with [the cost-shifting provisions of Code of Civil Procedure] section 1141.21 and insure that the costs of the arbitration and trial are borne by the proper party, the court must "refer" to the arbitrator's findings at some point prior to entry of judgment.' (*Ibid.*)"

By parity of reasoning, the same logic applies to trials de novo following decisions and awards of the commissioner, in which trials the

court hears the evidence anew, and must reach its decision based on that new evidence, with the decision of the commissioner " 'entitled to no weight whatsoever . . . .' " (*Post v. Palo/Haklar & Associates, supra,* 23 Cal.4th at p. 948, quoting *Sales Dimensions v. Superior Court, supra,* 90 Cal.App.3d at p. 763.) As the Court of Appeal below aptly observed, "the requirement of [a trial de novo] is satisfied as soon as the evidentiary proceedings end with a decision on the merits by the trial court. The de novo trial requirement [does not, in law or logic,] foreclose[] subsequent consideration of the commissioner's decision for [the limited] purpose[] of determining success in the trial court [for cost and fee-shifting purposes under section 98.2(c)]." Indeed, given the informal nature of a Berman hearing, the commissioner has no occasion to consider, much less award, attorney fees or other costs in the administrative proceeding in the first instance. As the Court of Appeal opined, "in order to comply with the mandate of section 98.2[(c)] and to insure that the proper party bears the costs of the de novo trial, the court *must* compare its judgment to the commissioner's award in order to assess the appealing party's success. To do otherwise [would] contravene[] the statute's purpose." (Italics added.)

As previously noted, the *Triad* court concluded that "the statutory language contained in [section 98.2(c)] of 'unsuccessful in [the] appeal', should be given the inverse meaning to that of 'prevailing party' which is well settled in this state. The prevailing party is the party in whose favor final judgment is rendered. [Citation.]" (*Triad, supra,* 153 Cal.App.3d at p. Supp. 15.) The *Cardenas* court adopted *Triad*'s reasoning, putting it in even terser terms: "For an appellant to be considered the successful party when seeking judicial review of an award of the Labor Commissioner, the judgment of the trial court must completely eliminate the Labor Commissioner's prior award. (See *Triad Data Services, Inc.* v. *Jackson*[*, supra,*] 153 Cal.App.3d Supp. 1, 14 . . . .)" (*Cardenas, supra,* 226 Cal.App.3d at p. 960.) In short, both the *Triad* and *Cardenas* courts went well beyond a mere holding that the commissioner's findings must be disregarded when determining the appealing party's success, for statutory fee and cost-shifting purposes, in a trial de novo following the commissioner's decision and award. We find the very wording and nature of the rule adopted by those courts to be strong evidence that they were focusing primarily on the *employer appeals* before them when seeking to construe the language of section 98.2(c). In suggesting that "the judgment of the trial court must completely eliminate the Labor Commissioner's prior award," the *Cardenas* court must have had as its principal focus the circumstance that, in the context of the employer appeal before it, unless the employer obtains a complete victory in the trial de novo, any resulting judgment for the employee, even a judgment of $1, will render the employee the "prevailing party" at trial and the employer liable for the

employee's fees and costs. But of course the same harsh rule must be applied in *employee appeals* as well, because the statutory language itself makes no distinction between employer and employee appeals, and as we have explained, the legislative purpose behind section 98.2(c) is to discourage frivolous and meritless appeals from the commissioner's decisions *by either party*. Hence, under the *Triad/Cardenas* test, in an employee appeal, as in the case now before us, unless the appealing employee loses every last dollar of the commissioner's prior award, he or she will be deemed successful in the appeal.

Put otherwise, the *Triad/Cardenas* courts' construction of section 98.2(c) shields an appealing employee from virtually all risk of fee and cost shifting, because an employee appealing from the commissioner's award is all but guaranteed some kind of judgment on appeal.[9] On the other hand, it penalizes an employer who files a meritorious appeal and succeeds in substantially reducing the employee's administrative award—only in the rare case, in which an employee's award is reduced to zero, would an appealing employer be able to avoid liability for the employee's attorney fees and costs in the de novo trial.

As with the judicial arbitration and statutory settlement fee-shifting statutes, section 98.2(c) is designed to penalize appealing employers *and* employees who turn to the courts after rejecting what, in retrospect, was a reasonable commissioner's award. (Cf. *Bodell Construction Co. v. Trustees of Cal. State University, supra,* 62 Cal.App.4th at p. 1518 [settlement offer].) We have shown that the legislative purpose behind section 98.2(c)'s fee-shifting provision is to discourage frivolous and meritless appeals *by either party* from the commissioner's decisions. As a practical matter, whether an appeal is unsuccessful for purposes of assigning fees and costs can only be determined with the benefit of hindsight by comparing the trial court's judgment with the prior administrative award. There is no legal impediment to doing so. The *Cardenas/Triad* test is at odds with each of these principles—it erroneously assumes comparison of the awards in each forum is prohibited as a matter of law; it encourages rather than discourages marginal employee appeals, because employees run little risk of liability for employer fees and costs in such appeals; and it discourages meritorious employer appeals, because employers who win a partial victory will still be liable for the employee's fees and costs except for the rare case in which the employee's award is reduced to zero.

---

[9]One report prepared when section 98.2(c) was enacted suggests that the commissioner's awards are affirmed approximately 80 percent of the time on appeal. (See Assem. Com. on Labor, Employment & Consumer Affairs, Rep. on Sen. Bill No. 1397 (1979-1980 Reg. Sess.) June 17, 1980.)

#### d. *Success in the trial de novo*

█ We conclude that the Court of Appeal below correctly construed section 98.2(c) as providing that, whether an employer or employee elects a trial de novo after the commissioner issues a decision and award, that party is "unsuccessful in the appeal," and thereby liable for the other party's fees and costs, unless the resulting trial court judgment is more favorable to the appealing party than was the administrative award from which the appeal was taken. Success in an appeal from a commissioner's decision does not require a complete reversal of the earlier award. In so holding, we disagree with the contrary views expressed in *Triad Data Services, Inc. v. Jackson, supra,* 153 Cal.App.3d Supp. 1, and *Cardenas v. Mission Industries, supra,* 226 Cal.App.3d 952, and disapprove those decisions to the extent they are inconsistent with the views we express today. The very point of the Labor Code's fee-shifting provision, as with similar statutory schemes, is to discourage a court trial where there is little likelihood of a different outcome. (Cf. *Wagy v. Brown* (1994) 24 Cal.App.4th 1, 10, fn. 5 [29 Cal.Rptr.2d 48] ["[I]n the relatively infrequent situation where the [statutory settlement] offer and judgment are equal . . . , as with a 'push' in the game of blackjack, the status quo ante prevails."].) Accordingly, in an *employer* appeal from a commissioner's decision, an incremental reduction in the administrative award constitutes success in the appeal; in an *employee* appeal, an incremental increase in the administrative award constitutes success in the appeal. Appellants who fail to gain at least some improvement over the prior administrative award are "unsuccessful in the appeal" for purposes of triggering fee and cost shifting under section 98.2(c).[10]

---

[10]The commissioner, in an amicus curiae brief filed in support of Smith, urges this court to adopt his specially proposed test for determining whether a party is "unsuccessful in the appeal" under section 98.2(c). Under the commissioner's proposed test, regardless of which party appeals, that party will be deemed "unsuccessful in the appeal" if the trial de novo results in a judgment greater than the amount that the employer unconditionally pays to the employee within 10 days of service of the commissioner's decision and award. However, under this proposal, as under the rule announced in *Triad* and *Cardenas,* an employer who appealed would still always be found "unsuccessful in the appeal," and liable for the employee's fees and costs, if the trial court entered a judgment in favor of the employee *in any amount.* Hence, if the employer contested only $1,000 of a $3,000 award, paid the employee the uncontested $2,000 before the trial de novo, and obtained a judgment after the trial de novo awarding the employee $1 instead of $1,000 on the contested claim, that employer would still be deemed "unsuccessful in the appeal" and liable for the employee's fees and costs.

Although we acknowledge the commissioner's good intentions in proposing an interpretation of section 98.2(c) that encourages the immediate payment of uncontested portions of administrative awards, we are not at liberty to rewrite the fee-shifting provision here in issue to require payment within 10 days of uncontested portions of the commissioner's awards. The remaining parts of the commissioner's specially proposed fee-shifting test for the most part

Under our construction of section 98.2(c), the judgment Smith won at the trial de novo would be compared with the earlier administrative award to determine whether it was more favorable to him. As the Court of Appeal pointed out, in this case the judgment and the award are identical, in dollar amount and in elements of damage, except that the judgment includes prejudgment interest on Smith's nonwage claims and the commissioner's award did not. Relying on the judicial grant of prejudgment interest (approximately $230) on the nonwage items (the reimbursable business expenses), Smith asserts he did in fact obtain a more favorable judgment after trial de novo.

At the time of the Berman hearing in this case, the commissioner was only authorized to award interest on wage order claims, not on other claims. (See §§ 98.1, 218.6, 200; cf. *American Federation of Labor v. Unemployment Ins. Appeals Bd.* (1996) 13 Cal.4th 1017, 1022 [56 Cal.Rptr.2d 109, 920 P.2d 1314]; *Currie v. Workers' Comp. Appeals Bd.* (2001) 24 Cal.4th 1109, 1111 [104 Cal.Rptr.2d 392, 17 P.3d 749] [construing workers' compensation statute that did not purport to limit administrative body's award of interest].)[11] Those same statutory constraints on the commissioner's authority to award interest on the nonwage items did not similarly bind the trial court, which heard Smith's claims de novo. (Cf. *Sales Dimensions v. Superior Court* (1979) 90 Cal.App.3d 757, 761-762 [153 Cal.Rptr. 690] [discovery permissible in de novo trials following labor commissioner decisions].) The policy and purpose behind section 98.2(c)— to give effect and finality to the commissioner's decisions and awards by discouraging frivolous and meritless appeals—arguably would best be served by defining Smith's success at trial without regard to the award of interest on the nonwage claims, which the commissioner, when hearing this case, lacked authority to award.[12] However, we need not decide whether Smith's award of prejudgment interest on his nonwage claims rendered his appeal successful, for purposes of cost and fee shifting, as that question is secondary to the

---

echo those aspects of the *Triad/Cardenas* test which, we have found, fails to reach an appropriate determination of success in a wage order appeal.

[11]Section 2802, the provision requiring employers to reimburse employee business expenses, has since been amended to authorize the commissioner to add interest on awards for reimbursement of those expenditures. (§ 2802, subd. (b), added by Stats. 2000, ch. 990, § 1.)

[12]We further agree with the Court of Appeal's observation that, as a general matter, success in an appeal from a labor commissioner's award should be assessed only after excluding costs or damages awarded in the trial de novo that result solely from continuation of the litigation on appeal. (Cf. *Wilson v. Wal-Mart Stores, Inc.* (1999) 72 Cal.App.4th 382, 393-394 [85 Cal.Rptr.2d 4] [postsettlement offer; prejudgment interest excluded from judgment in determination whether judgment more favorable than rejected settlement offer]; *Bodell Construction Co. v. Trustees of Cal. State University, supra,* 62 Cal.App.4th at p. 1521 [attorney fees incurred after settlement offer under Code Civ. Proc., § 998 excluded from judgment in determination whether judgment more favorable than rejected settlement offer]; *Harvard Investment Co. v. Gap Stores, Inc.* (1984) 156 Cal.App.3d 704, 713 [202 Cal.Rptr. 891]

broader question whether the Court of Appeal's construction of section 98.2(c), which we now approve, should be applied retroactively to Smith's appeal in the first instance.

### e. *Prospectivity of our holding*

█ Although as a general rule judicial decisions are to be given retroactive effect (*Newman v. Emerson Radio Corp.* (1989) 48 Cal.3d 973, 978, 981-982 [258 Cal.Rptr. 592, 772 P.2d 1059]), there is a recognized exception when a judicial decision changes a settled rule on which the parties below have relied. (See, e.g., *Brennan v. Tremco Inc., supra,* 25 Cal.4th at p. 318; *Droeger v. Friedman, Sloan & Ross, supra,* 54 Cal.3d at p. 45; *Woods v. Young, supra,* 53 Cal.3d at pp. 329-331.) "[C]onsiderations of fairness and public policy may require that a decision be given only prospective application. ([*Newman* v. *Emerson Radio Corp., supra,* 48 Cal.3d] at pp. 983-984; see *Estate of Propst* (1990) 50 Cal.3d 448, 463 [268 Cal.Rptr. 114, 788 P.2d 628]; *Moradi-Shalal* v. *Fireman's Fund Ins. Companies* (1988) 46 Cal.3d 287, 305 [250 Cal.Rptr. 116, 758 P.2d 58]; *Peterson* v. *Superior Court* (1982) 31 Cal.3d 147, 152 [181 Cal.Rptr. 784, 642 P.2d 1305].) Particular considerations relevant to the retroactivity determination include the reasonableness of the parties' reliance on the former rule, the nature of the change as substantive or procedural, retroactivity's effect on the administration of justice, and the purposes to be served by the new rule. (*Newman* v. *Emerson Radio Corp., supra,* at pp. 983-992; *Peterson* v. *Superior Court, supra,* at p. 152; *Neel* v. *Magana, Olney, Levy, Cathcart & Gelfand* (1971) 6 Cal.3d 176, 193 [98 Cal.Rptr. 837, 491 P.2d 421].)" (*Woods v. Young, supra,* 53 Cal.3d at p. 330.)

█ The Court of Appeal's construction of section 98.2(c) (comparison of the resulting judgment with the administrative award from which the appeal was taken to determine whether the appealing party was "unsuccessful" for fee-shifting purposes) represents a clear break from the *Triad* and *Cardenas* courts' construction of the statute (fee-shifting provision becomes operative only when the trial court's judgment completely eliminates the commissioner's award). The latter standard appears to have been uniformly applied until the Court of Appeal's decision in this case. Smith reasonably relied on the *Triad/Cardenas* rule in weighing the potential costs of unsuccessfully appealing his commissioner's award to the superior court. Under that rule, Smith would become liable for RVLG's attorney fees and costs only if the superior court reduced his award to zero, an unlikely occurrence.

---

[attorney fees].) The legislative purpose behind section 98.2(c) would be thwarted if costs or damages, including postaward interest, *attributable solely to the appealing party's continuation of the litigation on appeal,* were included in the judgment for purposes of assessing success on appeal.

The nature of the change effectuated by the new rule also supports our limiting our decision's retroactivity. That change involves only the formula by which the superior court determines, postjudgment, whether the appeal before it was or was not successful for limited fee- and cost-shifting purposes. Prospective application will remove no substantive defenses otherwise available to RVLG in this case. Retroactive application, on the other hand, would render Smith liable for RVLG's considerable attorney fees and costs regardless of his partially meritorious claims, a result he likely did not envision when he elected to appeal the commissioner's decision under the former rule. "Retroactive application of an unforeseeable procedural change is disfavored when such application would deprive a litigant of 'any remedy whatsoever.' (*Chevron Oil Co. v. Huson* (1971) 404 U.S. 97, 108 [30 L.Ed.2d 296, 306, 92 S.Ct. 349]; *Newman v. Emerson Radio Corp., supra,* 48 Cal.3d at pp. 990-991.)" (*Woods v. Young, supra,* 53 Cal.3d at p. 330.)

Concern for the administration of justice further supports prospective application of our decision, which, if applied retroactively, would stand to affect all pending appeals from the commissioner's decisions that were filed in the superior court in reliance on the former rule. Justice would not be served by designating such appeals successful or unsuccessful under a rule the appellants did not anticipate when they elected to appeal their administrative awards to the superior court. (*Woods v. Young, supra,* 53 Cal.3d at pp. 330-331; *Moradi-Shalal v. Fireman's Fund Ins. Companies* (1988) 46 Cal.3d 287, 305 [250 Cal.Rptr. 116, 758 P.2d 58]; *Li v. Yellow Cab Co.* (1975) 13 Cal.3d 804, 829 [119 Cal.Rptr. 858, 532 P.2d 1226, 78 A.L.R.3d 393].) Our construction of the fee-shifting provision announced today will better effectuate the intent and purpose of the statute—to discourage frivolous, meritless, and costly appeals from the commissioner's decisions to the courts. That important objective would not be served by retroactively applying the new rule to appeals already filed and pending in the superior courts, nor will it be compromised by prospective application of our decision. Accordingly, our holding today will be applied prospectively only to those appeals from the commissioner's decisions and awards filed in the trial court after the date this decision becomes final.

CONCLUSION

The judgment of the Court of Appeal is reversed and the matter remanded to that court for further proceedings consistent with the views expressed herein.

George, C. J., Werdegar, J., Chin, J., Brown, J., and Moreno, J., concurred.

**KENNARD, J.,** Concurring and Dissenting.—An employee who has not received wages when due may either bring a lawsuit against the employer or file a wage claim with the Labor Commissioner, who issues a decision after an informal hearing known as a Berman hearing. If the employee elects to file a wage claim, Labor Code section 98.2 permits either party to "appeal" from the Labor Commissioner's decision to the superior court. That court then conducts a trial and issues a decision in which the Labor Commissioner's decision carries no weight at all.

Labor Code section 98.2 further provides that the party who brings the appeal must pay the other party's attorney fees if the appealing party is "unsuccessful in the appeal." Departing from established precedent, the majority holds that, for purposes of this fee-shifting provision, an appeal is unsuccessful if the superior court judgment is not more favorable to the appealing party than the Labor Commissioner's decision. Because this construction of Labor Code section 98.2 is a radical departure from past decisional authority, the majority declines to apply it to this case.

I agree with the majority's disposition, which is consistent with past decisional authority, but I disagree with its construction of Labor Code section 98.2, which is to be applied in future cases.

I

As relevant here, Labor Code section 98.2 provides:

"(a) Within 10 days after service of notice of an order, decision, or award the parties may seek review by filing an appeal to the . . . superior court, in accordance with the appropriate rules of jurisdiction, *where the appeal shall be heard de novo.* . . .

"(b) Whenever an employer files an appeal pursuant to this section, the employer shall post an undertaking with the reviewing court in the amount of the order, decision, or award. . . .

"(c) If the party seeking review by filing an appeal to the . . . superior court is *unsuccessful in the appeal,* the court shall determine the costs and reasonable attorney's fees incurred by the other parties to the appeal, and assess that amount as a cost upon the party filing the appeal. . . ." (Italics added.)

The first decision construing Labor Code section 98.2 was *Triad Data Services, Inc. v. Jackson* (1984) 153 Cal.App.3d Supp. 1 [200 Cal.Rptr. 418].

There, the Labor Commissioner awarded an employee $2,275 for wages and $2,310 for waiting time penalties, which are statutorily required whenever an employer's failure to pay wages on time is willful. The employer appealed to the municipal court, which reduced the wage award to $1,631 and disallowed the waiting time penalties, but nonetheless awarded the employee an additional $1,000 in attorney fees. The employer appealed to the superior court appellate department, which rejected the employer's claim that attorney fees were erroneously awarded. The court reasoned that because the appeal of the Labor Commissioner's decision is actually a trial de novo, the success of the appeal is measured by the normal prevailing party standard. Under that standard, the employee was the prevailing party because she had recovered a net judgment in her favor.

Finding this reasoning persuasive, the Court of Appeal in *Cardenas v. Mission Industries* (1991) 226 Cal.App.3d 952 [277 Cal.Rptr. 247], which also involved an employer appeal, adopted the same construction of Labor Code section 98.2's attorney fee provision. This interpretation of Labor Code section 98.2, which I here refer to as the *Triad/Cardenas* rule, has been settled law since 1984.

## II

With this background in mind, I review the basic facts of this case.

Plaintiff Timothy L. Smith was an employee of defendant Rae-Venter Law Group (the Firm). After he resigned, Smith claimed the Firm owed him wages for four weeks of unused vacation and reimbursement for certain business expenses. The Firm refused to pay these amounts.

Smith submitted a claim to the Labor Commissioner, who notified the Firm. After an unsuccessful attempt at settlement, the Labor Commissioner filed an administrative complaint on Smith's behalf. In addition to the vacation pay and expense reimbursement issues, the complaint alleged that the Firm had unlawfully deducted its unemployment insurance expenses from Smith's pay. Smith had been unaware of these unlawful deductions before the Labor Commissioner discovered them during a review of the Firm's wage records.

The Berman hearing resulted in an award to Smith of $8,878.57, consisting of $6,865.31 for unused vacation time and unlawful unemployment insurance deductions, $632.94 for interest, and $1,380.32 for business expense reimbursement. The hearing officer refused to award waiting time penalties, which are statutorily required whenever an employer willfully fails

to pay wages on time, because the hearing officer found that the Firm's failure to timely pay Smith's wages was not willful.

Smith appealed the Labor Commissioner's decision. After a trial de novo, the superior court awarded the same amount as the Labor Commissioner, except that the court also awarded interest on the business expense reimbursement. Like the Labor Commissioner, the superior court declined to award waiting time penalties, finding that the Firm's withholding of wages was not willful. The Firm sought attorney fees in the amount of $32,000, arguing that Smith's appeal was unsuccessful because, apart from additional interest that the Labor Commissioner lacked authority to award, Smith did not recover more than the Labor Commissioner had awarded him. Applying the *Triad/Cardenas* rule, the court denied the motion, concluding that, because he was the prevailing party in the trial de novo, Smith had been successful in his appeal.

The Firm appealed, contending that the superior court had erred in denying its claim for attorney fees. Smith cross-appealed, contending that the superior court had erred in denying his claim for waiting time penalties. The Court of Appeal ruled for the Firm, holding that Smith was not entitled to waiting time penalties because the Firm's failure to timely pay wages was not willful, and that the Firm was entitled to attorney fees because Smith did not recover more than the Labor Commissioner had awarded him. Breaking with settled law, the Court of Appeal expressly rejected the *Triad/Cardenas* rule.

This court granted Smith's petition for review.

## III

To determine whether Smith must pay the attorney fees that the Firm incurred in defending his appeal, this court must construe Labor Code section 98.2. The aim of statutory construction is to ascertain and give effect to the intent of the Legislature that enacted the statute. (*Esberg v. Union Oil Co.* (2002) 28 Cal.4th 262, 268 [121 Cal.Rptr.2d 203, 47 P.3d 1069]; *People v. Gardeley* (1996) 14 Cal.4th 605, 621 [59 Cal.Rptr.2d 356, 927 P.2d 713].) A court begins by considering the words of the statute because they are usually the most reliable indicator of legislative intent. (*Esberg v. Union Oil Co., supra,* at p. 268; see also *Holloway v. United States* (1999) 526 U.S. 1, 6 [119 S.Ct. 966, 969-970, 143 L.Ed.2d 1].) "The words, however, must be read in context, considering the nature and purpose of the statutory enactment." (*Nahrstedt v. Lakeside Village Condominium Assn.* (1994) 8 Cal.4th 361, 378-379 [33 Cal.Rptr.2d 63, 878 P.2d 1275].) If uncertainty exists, a

court should consider the consequences of competing interpretations, choosing the one whose consequences are most harmonious with the statute's purposes. (*Western Oil & Gas Assn. v. Monterey Bay Unified Air Pollution Control Dist.* (1989) 49 Cal.3d 408, 425 [261 Cal.Rptr. 384, 777 P.2d 157].)

The words "unsuccessful on the appeal" in Labor Code section 98.2 are ambiguous. Usually, an appeal is deemed successful only if it results in an improvement of the appellant's position. Under this interpretation, which the majority adopts for use in future cases, the success of an appeal from a wage-claim decision of the Labor Commissioner is determined by *comparing* the superior court's judgment with the Labor Commission's award.

The difficulty with this reasoning is that an appeal under Labor Code section 98.2 is not an appeal in the usual sense. It is not a review of the Labor Commissioner's decision for error or abuse of discretion (see *Leone v. Medical Board* (2000) 22 Cal.4th 660, 666 [94 Cal.Rptr.2d 61, 995 P.2d 191]); instead, it is " ' "a trial anew in the fullest sense" ' " in which the Labor Commissioner's decision is " 'entitled to no weight whatsoever' " (*Post v. Palo/Haklar & Associates* (2000) 23 Cal.4th 942, 948 [98 Cal.Rptr.2d 671, 4 P.3d 928]). Because an appeal under Labor Code section 98.2 reopens all issues, as if the Labor Commissioner's decision did not exist, it may be more appropriate to measure a party's success in the superior court proceeding as it is measured in ordinary civil actions for purposes of making an award of costs, by deciding which party is the *prevailing party*. Under this interpretation, which is the *Triad/Cardenas* rule, an employee's appeal of a wage-claim award is successful if the superior court's judgment is in the employee's favor, and an employer's appeal is successful if the superior court's judgment is not in the employee's favor. (See Code Civ. Proc., § 1032, subd. (a)(4) [defining "prevailing party"].)

Which of these competing interpretations is most consistent with the purposes and policies that the Legislature intended Labor Code section 98.2 to further? There are three policies to consider. Underlying all procedures for resolving wage claim disputes is the overriding legislative policy to encourage employers promptly to pay wages when due. As this court has noted, " '[p]ublic policy has long favored the "full and prompt payment of wages due an employee." ' " (*Cuadra v. Millan* (1998) 17 Cal.4th 855, 871 [72 Cal.Rptr.2d 687, 952 P.2d 704], quoting *Pressler v. Donald L. Bren Co.* (1982) 32 Cal.3d 831, 837 [187 Cal.Rptr. 449, 654 P.2d 219].) Also at issue is the legislative policy to encourage use of Berman hearings to achieve final resolution of wage disputes. (See *Cuadra v. Millan, supra,* at p. 869 [stating that "the purpose of the Berman hearing procedure is to avoid recourse to costly and time-consuming judicial proceedings in all but the most complex

of wage claims"]; accord, *Lolley v. Campbell* (2002) 28 Cal.4th 367, 372 [121 Cal.Rptr.2d 571, 48 P.3d 1128].) Finally and most directly linked to the attorney fee provision of Labor Code section 98.2, there is a policy to discourage frivolous and meritless appeals from the decisions of the Labor Commissioner after Berman hearings.

As the Labor Commissioner points out in an amicus curiae brief filed in this court, an employer can narrow the issues that the superior court considers in a wage dispute appeal by making an unconditional payment, before the appeal hearing, of part or all of the amount that the Labor Commissioner has awarded.

Consider first how the two competing interpretations of Labor Code section 98.2 affect the policy favoring prompt payment of wages due. The *Triad/Cardenas* rule promotes this policy by encouraging employers to pay all or part of the Labor Commissioner's award, because by doing so the employer narrows the issues to be litigated in the superior court proceeding to those in which the employer is most likely to prevail, thereby increasing the employer's chances of being the prevailing party in that proceeding. The majority's comparison test, on the other hand, does nothing to encourage the employer to pay any part of the Labor Commissioner's award. Simply by appealing, the employer can require the employee to again prove every component of the employee's wage claim, and the employee's right to attorney fees on the appeal will not depend on which party is the prevailing party in this full new trial, but instead on whether the judgment is more or less favorable to the employee than the Labor Commissioner's award.

Consider next the policy of encouraging employees to use the Berman hearing procedure to resolve their wage claim disputes. The majority's comparison test does not serve this policy. An employee who elects not to file a wage claim, and instead proceeds directly to superior court to settle a wage dispute, can obtain an attorney fee award simply by being the prevailing party (that is, recovering a net judgment for any of the amount claimed). (Lab. Code, §§ 218.5, 1194.) But if the employee first uses the Berman hearing procedure by filing an administrative wage claim, and the employer appeals the Labor Commissioner's award, the employee must prove the wage claims in superior court as if the employee had filed in superior court in the first instance, and the employee can obtain an attorney fee award only by recovering as much or more than the Labor Commissioner awarded. If the superior court's judgment is less than the Labor Commissioner's award, the employee's attorney fees, which may well exceed the amount of wages recovered, will be nonrecoverable. In this way, the majority's comparison test puts employees who use the Berman hearing procedure in a worse

position than employees who proceed directly to court, thus discouraging use of the legislatively favored administrative process for resolving wage claims.

Consider finally the policy of discouraging frivolous and meritless appeals from Labor Commissioner decisions. Both the majority's comparison test and the *Triad/Cardenas* prevailing party test effectively discourage meritless appeals. The majority's test may be marginally more effective at discouraging employee appeals, and the prevailing party test may be marginally more effective at discouraging employer appeals, but neither test has a clear advantage when both sorts of appeals are considered.

Under the majority's comparison test, an appealing employee must pay not only his or her own attorney fees, but also the employer's attorney fees, unless the employee, after relitigating all components of the wage claim, obtains a recovery greater than the Labor Commissioner's award. Under the *Triad/Cardenas* prevailing party test, in contrast, an appealing employee must pay not only his or her own attorney fees, but also the employer's attorney fees, unless the employee can prevail on those issues and components of the wage claim that the employer continues to dispute. By paying part or all of the Labor Commissioner's award, the employer can narrow the issues to be litigated in superior court and thereby increase its own chances of being the prevailing party. Knowing that their own attorney fees must be paid out of the recovery, and that they will also have to pay the employer's attorney fees unless they prevail on the issues that the employer chooses to litigate, employees will be discouraged from appealing most Labor Commissioner awards under either test.

Similarly, under the majority's comparison test, an appealing employer must pay not only its own attorney fees, but also the employee's attorney fees, unless the employee's superior court judgment is less than the Labor Commissioner's award. Under the *Triad/Cardenas* prevailing party test, in contrast, an appealing employer must pay not only its own attorney fees, but also the employee's attorney fees, unless the employer can prevail on those issues and components of the wage claim that it continues to dispute. Knowing that its own attorney fees must be paid out of the recovery, and that it will also have to pay the employee's attorney fees unless it prevails on the issues it chooses to litigate, an employer will be discouraged from appealing Labor Commissioner awards in most instances.

In summary, neither test has a clear advantage in discouraging meritless appeals. But the established *Triad/Cardenas* prevailing party test is more effective in furthering the other two legislative policies at issue: encouraging prompt payment of wages due and encouraging use of administrative Berman hearings rather than superior court proceedings to resolve most wage disputes.

I am not persuaded by the majority's analogy to the legislative schemes for judicial arbitration (Code Civ. Proc., § 1141.10 et seq.) and settlement offers (*id.*, § 998). For one thing, the language of those provisions (expressly requiring a "more favorable" result) shows that the Legislature knows how to require a comparison test when that is what it wants. The language of Labor Code section 98.2 (requiring that the appealing party be "unsuccessful") is significantly different, suggesting that the Legislature intended something other than a comparison test. "When the Legislature uses materially different language in statutory provisions addressing the same subject or related subjects, the normal inference is that the Legislature intended a difference in meaning." (*People v. Trevino* (2001) 26 Cal.4th 237, 242 [109 Cal.Rptr.2d 567, 27 P.3d 283].) In addition, those schemes are distinguishable from the Labor Code provisions governing wage claims because they do not concern a sensitive public policy like the prompt payment of wages, nor a policy comparable to the legislative policy in favor of administrative resolution of wage claim disputes.

For these reasons, the Legislature most likely intended that courts should use the established prevailing party test, rather than the majority's more-favorable-result test, to determine entitlement to attorney fees under Labor Code section 98.2.