[No. E014456. Fourth Dist., Div. Two. June 17, 1996.]

KARAMBIR S. BHULLAR, Plaintiff, Cross-defendant and Appellant, v. ZAFAR TAYYAB, Defendant, Cross-complainant and Appellant.

584

COUNSEL

Mazur & Mazur and Janice R. Mazur for Plaintiff, Cross-defendant and Appellant.

Donald N. Feld for Defendant, Cross-complainant and Appellant.

OPINION

RICHLI, J.—Plaintiff Karambir S. Bhullar (seller) sued defendant Zafar Tayyab (buyer) for damages arising from the unsuccessful sale of a liquor store to buyer. The buyer cross-complained on the ground that the seller had suppressed a material fact in connection with the sale. The seller appeals from a judgment in favor of the buyer on the cross-complaint for material misrepresentation; the buyer appeals on the ground the trial court erred in failing to award him attorney fees.

FACTS

Seller owned a liquor store from December 1987 to April 1991. After some meetings or negotiations, buyer agreed to purchase the liquor store for

$145,000. The buyer took possession on April 12, 1991. Except for the store's checking account, which was put in the names of both seller and buyer, there was no documentation of transfer; there was no bill of sale and no transfer of the liquor license.

In the meetings held before the sale, the seller did not inform the buyer orally that there were unpaid bills incurred before the transfer. Although the seller and his accountant testified that the buyer had access to the store's financial records before the transfer, the buyer testified he was not able to review the books before taking possession of the store.

The buyer was unsatisfied with the gross sales figures. The store was grossing only $25,000 per month instead of $30,000 to $35,000, as the seller had told him. The buyer also complained about outstanding bills coming in that had been incurred before he took over the store.

In the last week of September 1991, the seller found out that bills were not being paid, the rent had not been paid, and money was not being deposited into the joint checking account. The buyer testified he had not made these payments because he had to pay vendors who were owed money before he took over the store. The buyer wrote a letter to the seller in September, and caused it to be sent to the seller in October. The gist of the letter was that the buyer wanted to close the store and return it to the seller. On October 9, 1991, before he received the buyer's letter, the seller retook possession of the store. The seller continued to operate the store up through the time of trial.

The seller sued the buyer for breach of contract and other causes of action. The buyer cross-complained for rescission. The buyer claimed the seller had obtained the agreement by fraud and deceit by representing that the gross sales were $35,000 per month, instead of the actual figure of $25,000, and by concealing that he was in arrears on rent payments and to vendors in the sum of $17,000.

On April 1, 1993, the buyer offered to settle the case for $25,000, pursuant to Code of Civil Procedure section 998.[1] The seller declined the offer.

The matter went to arbitration. The arbitrator awarded nothing to either party, and declared that each party bear its own costs and attorney fees. Seller asked for a trial de novo.

A jury returned special verdicts finding both that seller had made a misrepresentation of fact, causing damage to the buyer in the amount of

---

[1] All further references are to the Code of Civil Procedure unless otherwise noted.

$24,187.31, and that the seller had concealed or suppressed a material fact, causing damage to the buyer in the amount of $14,800. The jury found for the buyer and against the seller on the seller's causes of action.

The judgment awarded the buyer $38,987.31 plus costs of suit. The buyer moved to fix the amount of attorney fees to be included in the costs. The court denied the motion for attorney fees on the ground that the seller reasonably rejected the settlement offer under section 998.

The seller appeals from the judgment on the cross-complaint; the buyer appeals the denial of attorney fees.

### DISCUSSION

#### I. Seller's Appeal

The seller contends the finding he intentionally concealed a material fact is faulty because it cannot be determined upon which of two facts the jurors based their findings. That is, the seller argues that some jurors might have based the finding on the seller's concealment of the outstanding bills, while others might have based the finding on the seller's concealment of the true gross sales of the store. Unless it can be determined that all the jurors based the finding on the same fact, the seller argues, there was not the required concurrence of three-fourths of the jurors in the special verdict.

The seller concedes he did not raise this issue in the trial court below. In addition, the contention is without merit. The special verdict forms were lengthy. The jury considered several separate inquiries concerning whether seller had made a material misrepresentation, and additional inquiries whether the seller had concealed or suppressed a material fact. The jury obviously perceived the two sets of inquiries as separate, and was able to assign different damages to each. The case was clearly argued, with particular reference to the special verdict forms, on the theory that the questions concerning the material misrepresentation related to the misrepresentation of gross sales, and that the questions concerning the concealment or suppression of fact related to the failure to disclose the unpaid rent and bills. The verdict was not ambiguous. More than three-quarters of the jury concurred with each of the special verdict findings.

#### II. Buyer's Appeal

Before trial, the buyer made an offer under section 998 to settle the case for $25,000. The seller declined to settle. The judgment at trial was against

the seller for $38,987.31. If a party refuses a section 998 settlement offer, and fails to secure a more favorable judgment at trial, the party that offered to settle "may be entitled, in the discretion of the court, to an award of attorney's fees . . . ." (§ 1021.1, subd. (b).)

The case was sent to judicial arbitration. The arbitrator awarded nothing to either party. The seller requested a trial de novo. Section 1141.21 provides that, "[i]f the judgment upon the trial de novo is not more favorable . . . for the party electing the trial de novo than the arbitration award, the court *shall* order that party to pay the following nonrefundable costs and fees, unless the court finds in writing and upon motion that the imposition of such costs and fees would create a substantial economic hardship as not to be in the interest of justice: [¶] . . . [¶] (ii) To the other party, . . . *all costs specified* in Section 1033.5, . . .". (§ 1141.21, subd. (a)(ii), italics added.)

The "costs specified in Section 1033.5" include "Attorney fees, when authorized by any of the following: [¶] (A) Contract. [¶] (B) Statute. [¶] (C) Law." (§ 1033.5, subd. (a)(10).)

Because the seller did not obtain a more favorable judgment on trial de novo than the arbitration award, the buyer contends he was entitled, as part of his costs, to an award of attorney fees pursuant to section 1141.21. That is, because the seller did not obtain a more favorable award, the court "shall" order the seller to pay the "costs specified in Section 1033.5." The "costs specified in Section 1033.5" include "Attorney fees, when authorized by . . . [s]tatute," and attorney fees here were "authorized by [s]tatute" pursuant to section 1021.1, because the seller did not obtain a more favorable judgment after rejecting buyer's settlement offer under section 998.

The seller contends that, because the court may exercise its discretion in awarding section 998 attorney fees (for failing to get a more favorable award after settlement offer), the court here was within its discretion to deny the fees under section 1141.21 (for failing to secure a more favorable award after arbitration). In other words, section 1141.21 incorporates section 1033.5 by reference; section 1033.5 in turn incorporates by reference the terms of any statute authorizing attorney fees; therefore, if the authorizing statute gives the trial court discretion in deciding whether or not to award attorney fees, it retains such discretion under section 1141.21.[2]

We disagree. The buyer argues with some force that, while section 1021.1 makes it discretionary for the court to award attorney fees when a party

---

[2]At oral argument, seller cited two cases—*Music Acceptance Corp.* v. *Lofing* (1995) 32 Cal.App.4th 610 [39 Cal.Rptr.2d 159] and *Crampton* v. *Takegoshi* (1993) 17 Cal.App.4th 308 [21 Cal.Rptr.2d 284]—for the proposition that section 1141.21 makes mandatory an attorney

refuses a settlement offer, the Legislature in section 1141.21 has made it mandatory to award costs—including attorney fees if at all authorized—when a party refuses to accept a judicial arbitration award.

As the buyer points out, many statutes authorizing attorney fees are discretionary; if section 1141.21 merely reiterated that same discretion, then the word "shall" would be effectively read out of its language and, particularly in view of the frequently minor role played by costs, its purpose would be eviscerated as well.

The language of section 1141.21 supports the buyer's interpretation. While section 1021.1 states that "Reasonable attorney's fees, *may* be awarded in an amount to be determined *in the court's discretion*," (§ 1021.1, subd. (a), italics added), that "[a] party *may* be entitled, *in the discretion of the court*, to an award of attorney's fees" for failure to obtain a more favorable judgment after a section 998 offer (§ 1021.1, subd. (b), italics added), and that the court "shall consider" certain factors "[*i*]*n exercising its discretion* to award attorney's fees," (§ 1021.1, subd. (c); see also subd. (d), italics added), section 1141.21 provides that, if a party fails to secure a more favorable judgment after asking for a trial de novo, "the court *shall order that party to pay* the following *nonrefundable costs and fees.*" (§ 1141.21, subd. (a), italics added.) The only provision allowing the court *not* to award the costs and fees is if the court "finds in writing and upon motion that the imposition of such costs and fees would create such a substantial economic hardship as not to be in the interest of justice." (*Ibid.*) As previously noted, the court "shall" order the party to pay "To the other party . . . *all costs specified in Section 1033.5*," (§ 1141.21, subd. (a)(ii), italics added), which includes "Attorney fees, when authorized by . . . [s]tatute."

Normally, the word "may" connotes a permissive act, and the word "shall" indicates a mandatory directive.

Secondly, the legislative purpose and policy support the buyer's view. The Legislature expressly declared that it enacted the judicial arbitration scheme because small civil claims were so numerous and costly that a more efficient procedure was needed to resolve such minor disputes more quickly. (See § 1141.10, subd. (a).) "Cases which fall within the jurisdictional limits of the [arbitration] act can be compelled into arbitration. However, parties who are dissatisfied with the outcome at arbitration are guaranteed their day in court. The Legislature expressly stated that '[a]ny party may elect to have a de

fee award only if the statute authorizing an award is itself mandatory and not discretionary. We have reviewed the cases. Neither stands for the stated proposition; they are inapposite.

novo trial, by court or jury, both as to law and facts.' (Code Civ. Proc., § 1141.20.) [Fn. omitted.] . . .

". . . . . . . . . . . . . . . . . . . .

"Undoubtedly, the Legislature's intent is to discourage trials de novo. 'While there is no specific legislative language to that effect, it is apparent that the legislature desired alternative, not cumulative, dispute resolution . . . and that the disincentive of Cal. Civ. Proc. Code § 1141.21 (West 1982) reflect[s] that underlying purpose.' [Fn. omitted, citation omitted.] '[T]he procedure for a de novo trial substantially defeats [the Legislature's] objective in cases in which it is invoked.' (*Alvarado* v. *City of Port Hueneme* (1982) 133 Cal.App.3d 695, 705 [184 Cal.Rptr. 154].)" (*Demirgian* v. *Superior Court* (1986) 187 Cal.App.3d 372, 375-376 [231 Cal.Rptr. 698].)

■ "Unlike commercial or true arbitration, judicial arbitration is not binding, since any party dissatisfied with an award may elect trial de novo. [Fn. omitted.] (Code Civ. Proc., § 1141.20.) The Legislature, however, seeking to encourage finality of judicial arbitration awards, enacted disincentives to trial de novo. (See *Demirgian* v. *Superior Court* (1986) 187 Cal.App.3d 372, 376 [231 Cal.Rptr. 698].) For example, if a party requesting trial de novo does not obtain a more favorable judgment, he or she is liable for significant costs and fees. (Code Civ. Proc., § 1141.21.) [¶] Discouraging trial de novo is essential to the proper functioning of the judicial arbitration system. Along with its goal of resolving small claims efficiently and affordably, judicial arbitration is intended to ease court case loads. (Kanowitz, *Alternative Dispute Resolution and the Public Interest: The Arbitration Experience* (1987) 38 Hastings L.J. 239, 292.) The success of judicial arbitration in achieving these goals is dependent on a small incidence of trial de novo election. (*Id.*, at p. 293.)" (*Flynn* v. *Gorton* (1989) 207 Cal.App.3d 1550, 1555 [255 Cal.Rptr. 768].)

When a party refuses to accept a settlement offer under section 998, the court has been given a broad discretion to award or not to award attorney fees. Such offers of settlement normally come well before trial. No very great expenditure of judicial resources has yet occurred, and there may be substantial reason not to accept a particular settlement offer.

■ Asking for a trial de novo after arbitration is quite another matter. Of necessity, each party at that stage will have had to prepare the entire case, and will have presented all the evidence, oral and written, to a neutral arbiter. The parties and the judicial system will essentially have invested significantly in a "trial" of the merits of the action. The Legislature has

clearly enacted a policy of encouraging the parties to accept arbitration awards. The legislative policy promotes judicial economy in a world of limited courtroom space and limited tax dollars. Thus, after arbitration, unlike settlement, it makes sense that the court has only limited discretion under section 1141.21. The trial court must award section 1033.5 costs, including attorney fees, "unless the court finds in writing upon motion that imposition of such costs and fees would create such an economic hardship as not to be in the interest of justice." There was no such motion made below, and no such finding.

As the buyer points out, the purpose of the arbitration scheme is to promote acceptance of arbitration awards. It is not intended merely to place obstacles in the path of litigants on their way to the courthouse. "We do not need preliminary hearings in civil cases." If the imposition of attorney fees remains as broadly discretionary after arbitration as after a settlement offer, then the significant disincentives to refusing an arbitration award will largely have been written out of the statute. Arbitrations become a useless and burdensome exercise. It is thus apparent that the award of fees and costs, including attorney fees, must be mandatory unless the court finds it will work a manifest economic hardship.

In an analogous context, the court in *Morin* v. *ABA Recovery Service, Inc.* (1987) 195 Cal.App.3d 200 [240 Cal.Rptr. 509] (disapproved on another point in *Lakin* v. *Watkins Associated Industries* (1993) 6 Cal.4th 644, 664 [25 Cal.Rptr.2d 109, 863 P.2d 179]), held that Civil Code section 3291 imposed a mandatory obligation to award prejudgment interest where the conditions of that statute were met. "The manifest purpose of section 3291 is to encourage settlement. [Citations.] Section 3291 '. . . substantially increases the stakes for a defendant faced with a pretrial offer to settle [under Code of Civil Procedure section 998].' [Citation.] Construing section 3291 as granting the trial court discretion to deny prejudgment interest would impair the very purpose of the statute's enactment. [Citation.] Interpreting the statute as mandatory furthers the legislative intent to encourage settlements." (*Morin, supra*, at p. 206.)

Similarly, the manifest purpose of section 1141.21 is to encourage acceptance of arbitration awards and to construe the provision to grant the trial court broad discretion whether or not to include attorney fees and other fees and costs would impair that purpose. "Interpreting the statute as mandatory furthers the legislative intent to encourage" acceptance of arbitration awards.

The seller argued below simply that the trial court had discretion not to award attorney fees for failing to accept a settlement offer under sections

998 and 1021.1, and that therefore there was no statutory basis to award fees under section 1141.21. The court denied attorney fees solely on the basis of section 1021.1, subdivision (c)(1), in that the seller reasonably rejected the settlement offer under the circumstances at that time. Both the seller and the trial court failed to address the argument that the fees, allowable by statute as discretionary after failure to accept a settlement, were made mandatory after failure to accept an arbitration award. Section 1141.21 requires the fees to be awarded, unless upon motion, the court finds in writing that there would be an economic hardship contrary to the interest of justice. The seller made no such motion below, and the court made no such finding. Accordingly, the order denying attorney fees must be reversed.

## DISPOSITION

The judgment in favor of the buyer and against the seller is affirmed. The order denying the buyer's attorney fees is reversed and the court is directed to make an appropriate award of attorney fees to the buyer pursuant to section 1141.21. Defendant buyer shall recover costs on appeal.

Ramirez, P. J., and McKinster, J., concurred.